ORIGINAL

ECF

FILED
JUL 7 2004
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **DRC, INC.** <br> **Plaintiff,** | ) <br> ) <br> ) | |
| **v.** | ) <br> ) | **Case No.** 04-1124C |
| **UNITED STATES,** <br> <br> **Defendant.** | ) <br> ) <br> ) | |

## COMPLAINT

COMES now, Plaintiff, DRC, Inc. ("DRC") and files this Complaint for its cause of action respectfully shows this Court as follows:

## PARTIES

1.

DRC, Inc. ("DRC") is an Alabama Corporation with its principal place of business in Mobile, Alabama.

2.

DRC specializes in providing construction and disaster recovery services worldwide. DRC has successfully completed projects throughout the United States as well as Kuwait, Serbia, Somalia and Kosovo. DRC had never performed a contract in Honduras before the contract at issue in this appeal and another sister project ("Contract 1") involving a similar scope of work but different construction locations.

3.

DRC, Inc. has filed suit in this Court for monies owed under the sister project. That suit is a directly-related case involving many of the same disputed issues.

4.

The United States Agency for International Development ("USAID") is an independent federal government agency of the United States.

**JURISDICTION AND VENUE**

5.

Jurisdiction over this matter is properly based upon 28 U.S.C. §§ 1346 and 1491. This Complaint states a claim against the United States founded upon an express or implied contract with the United States.

**FACTUAL BACKGROUND**

6.

On June 9, 1997, Hurricane Mitch struck Honduras and caused severe infrastructure damage throughout the country.

7.

The Honduras Fund of Social Investment ("FHIS") is a political subdivision of the Honduran government. FHIS issued a solicitation described as:

> #62747 RECONSTRUCTION PROGRAM, GROUP 1A CONSTRUCTION OF A SANITARY SEWER AND POTABLE WATER SYSTEM.

8.

FHIS awarded the above described solicitation to DRC on December 29, 2000 in the amount of $8,373,930 ("Contract 1A").

9.

FHIS issued the Notice to Proceed on January 4, 2001. The performance period for Contract 1A was initially set at 332 days.

10.

The United States Agency for International Development ("USAID") provided the funding for this contract. The contract was awarded and administered by FHIS. See Exhibit A, Termination for Convenience Proposal of DRC at Tab 1, pp. 20-25.

11.

The contract documents were written in Spanish.

12.

The contract was awarded and administered in Spanish. DRC's management did not understand or speak Spanish. However, DRC hired interpreters and others who would assist in communicating with FHIS and translating the contract and associated correspondence.

13.

DRC mobilized to the project and started work. The contract provided a $473,996.08 payment to the contractor for mobilization. USAID refused to fund this amount and forced DRC to fund the mobilization for the project. This bad faith refusal to pay this earned and invoiced amount placed severe financial strain on DRC, a small business. In fact, FHIS and USAID paid DRC nothing until almost two (2) years later.

14.

On March 1, 2001, FHIS issued DRC an order to suspend work. Id. at p. 28.

15.

On June 18, 2001, USAID requested FHIS to terminate Contract 1A by obtaining the consent of DRC to the termination. See Exhibit B.

16.

By letters dated June 26, 2001 and July 25, 2001 (Exhibit D), USAID requested FHIS to assign FHIS's contract rights to USAID so that USAID could negotiate all final termination costs directly with DRC. FHIS and USAID did not terminate DRC's contract and provided no notice in writing of any intent to terminate. Instead, the suspension notice remained in effect without modification. DRC was not directed to demobilize nor did FHIS ever question DRC's standby of its resources.

17.

Throughout this time period, DRC was not told to demobilize. DRC was constantly assured that the suspension period would end soon. Therefore, DRC remained on standby, ready to begin performance after the suspension order was terminated.

18.

On October 22, 2001, FHIS assigned Contract 1A to USAID for purposes of negotiating the termination of Contract 1A. See Exhibit A, Tab 1 at p. 35.

19.

On October 23, 2001, DRC's work had been suspended for 236 days. DRC kept its personnel, subcontractors and equipment on standby during this time period. Finally, on October 23, 2001, Contract 1A was terminated by mutual agreement between FHIS and DRC. (Exhibit A, Tab 1 at pp. 32-34; hereinafter "Termination Agreement"). Both parties agreed that USAID would negotiate the closeout of the contract and reimburse DRC's costs.

20.

The Termination Agreement reserved to DRC the right to reimbursement of its eligible costs resulting from the suspension of performance and termination of Contract 1A. Any

contract rights relating to disposition of equipment and materials were also reserved. The agreement did not incorporate any relevant Federal Acquisition Regulation requirements.

21.

Under the Termination Agreement, DRC agreed to pursue reimbursement of its suspension and termination costs directly from USAID. Under USAID's agreement with FHIS (Id. at p. 35), USAID had agreed to negotiate, settle and pay any additional contract payments owed to DRC.

22.

Contract 1A was a construction contract. The Termination Agreement provided a complete termination of the contract.

23.

Under FAR § 49.206-2(b)(4), A contractor is required to use the total-cost basis for calculating the amount of its termination proposal when a construction contract is completely terminated for inconvenience. DRC prepared its termination proposal using the Federal Acquisition Regulations as a guide. DRC did not agree to all of the FAR limitations regarding cost allowability.

24.

Although Contract 1A did not incorporate the FAR, DRC elected to submit its termination proposal on a total cost basis. Neither USAID or FHIS has ever objected to submission of the proposal using the total cost basis.

25.

DRC is not a CAS covered contractor pursuant to Part 30 of the Federal Acquisition Regulations.

26.

Contract 1A was not awarded as a cost reimbursable contract. The contract was awarded as a fixed unit price contract whereby the contractor was required to document the units of measurement listed in the contract line items as the contractor completed its work and requested payment.

27.

DRC is a United States small business.

28.

In December of 2002, two years after the award of the contract and almost two years after DRC started performance, USAID finally funded and paid the only contract payment that DRC was allowed to keep and that USAID did not unilaterally swipe out of DRC's bank account without DRC's permission. The amount of this payment was $92,273 for stored materials purchased almost two years previously. USAID provided no compensation or reason for this late payment.

29.

DRC submitted its termination for convenience proposal on January 21, 2002 to USAID.

30.

DRC submitted its proposal while using the Federal Acquisition Regulations applicable to convenience termination proposals as a guide.

31.

On August 23, 2002, DRC representatives met with Jim Athanas of USAID. Mr. Athanas represented that he was the Termination Contracting Officer ("TCO"). He admitted that although he did not have a warrant of authority, the Contracting Officer would sign anything that

Mr. Athanas gave him. The DRC personnel told him that DRC had requested approval of subcontractors for this project on many occasions and that approval took eight months for the sister project. Other factual matters were discussed and information provided as described in DRC's memorandum of the meeting. See Exhibit E.

32.

USAID thereafter performed an audit of DRC's proposal.

33.

DRC cooperated in the audit of its books and records.

34.

The USAID audit was flawed for many reasons. First, the audit mistakenly concluded that DRC's contract was effectively terminated in June when the contract was undeniably terminated in writing on October 23, 2001. Secondly, the audit was flawed since its purpose was to save USAID money, not to equitably determine the amounts due under the termination proposal. Thirdly, subcontractor claims were flatly denied without regard to DRC's liability for these amounts arising from the termination of the subcontractors. Fourthly, the auditor ignored and refused to acknowledge the information provided to USAID as described in the August 23, 2002 memo at Exhibit E. The Audit Report was flawed in many other respects.

35.

On December 2, 2002, USAID issued its Audit Report. The USAID Audit Report questioned almost the entire amount in DRC's proposal. See Exhibit F.

36.

By letter dated filed February 4, 2003, the Contracting Officer recognized that DRC was owed $165,616. USAID paid this amount but swiped it back from DRC's bank account. See Exhibit 6.

37.

The additional amounts amount that the Contracting Officer found due, was paid to DRC by wire transfer and then, without DRC's consent or notice by USAID, taken back out of DRC's bank account by USAID.

38.

USAID's apparent reason for seizing DRC's funds and taking these funds out of DRC's account without DRC's approval, is that DRC refused to waive, without further consideration, entitlement to disputed amounts that DRC, in good faith, believed that it was owed.

39.

The total amount of DRC's termination proposal is $1,855,531 of which USAID has only paid $92,273.

40.

USAID has not paid $1,793,258 claimed from DRC's proposal of which USAID has admitted that $165,616 is not disputed.

41.

By Complaint dated July 28, 2003, DRC filed a Notice of Appeal and Complaint with the Armed Services Board of Contract Appeals.

42.

By Decision dated June 17, 2004 (Exhibit G), the Armed Services Board of Contract Appeals dismissed DRC's appeal finding that the Board did not have jurisdiction under the Contract Disputes Act to decide the Appeal.

43.

DRC is filing this lawsuit as a breach of contract action under the Tucker Act (28 U.S.C. §§ 1346, 1491).

**COUNT I – BREACH OF CONTRACT**

44.

USAID agreed to negotiate, settle and pay amounts due under the contract arising from USAID's and FHIS' termination of the contract.

45.

USAID has refused to negotiate the amounts due under the contract and has refused to pay amounts which are not in dispute.

46.

USAID has breached its contract and agreement to negotiate and pay for the costs due and owing under the contract.

47.

DRC is owed as a settlement of its contract, its termination costs of $1,793,258 that it has not been paid or such other amount as DRC may prove, at a hearing, for this dispute.

48.

DRC is owed these amounts as breach of contract damages (as agreed to in the termination of October 23, 2001) as well as any other breach damages which DRC may prove at trial.

**PRAYER FOR RELIEF**

WHEREFORE, DRC, Inc. respectfully requests this Court to enter judgment in the amount of $1,793,258, or such other amount as proven by DRC at a hearing on this matter, together with interest and such other and further relief as this Court may order.

DATED this 6th day of July, 2004.

Karl Frederick Dix

SMITH, CURRIE & HANCOCK LLP
2600 Peachtree Center – Harris Tower
233 Peachtree St. N.E.
Atlanta, GA 30303-1530
(404)521-3800
(404)688-0671 fax

ATTORNEYS FOR DRC, INC.