CONSTRUCTION CLAIMS CONSULTANTS

• SERVING THE CONSTRUCTION INDUSTRY SINCE 1978 •

Results of 8-23-02 meeting with Jim Athanas (USAID) and DRC, ie Group1A Termination for Convenience Proposal

1. At 9:00 AM on 23 Aug 02, John Sloke, Hal Callaway and Xiomara Hernandez met with Jim Athanas to review issues related to the Termination for Convenience of Contract 1A for the Construction of a Sanitary Sewer and Potable Water System for USAID & FHIS.

2. The issues identified as a result of this meeting were as follows:

   A. Subcontracts had not been approved or signed at the time of the Termination for Convenience: Athanas indicated that AID may not consider the costs incurred by the subcontractors as compensable as a result of FHIS's lack of approval of the subcontracts. Athanas will look further into this issue. DRC pointed out that this was an 11 month contract and that it took FHIS 8 months to approve these same subcontractors on the previous contract. DRC provided Athanas copies of correspondence requesting approval and showed him also where the form contracts had been submitted and pointed out that the request had been made three times as of 14 Feb 01. DRC pointed out the fact that the sub costs were incurred by DRC pursuant to the contract and are compensable under the Termination for Convenience whether or not the subcontracts were signed or approved.

   B. Athanas indicated that AID had a problem with the fact that the subs had not been paid by DRC. He later recanted on this position but DRC is still unsure of AID's position on this matter. DRC pointed out that the subs have not been paid (with the exception of one $30,000. payment to Cordica) and will not be paid until compensation is received from USAID. DRC expects further clarification from USAID on this issue.

   C. Athanas indicated that he was taking the position that the contract was in fact terminated on 18 June 01 in lieu of the actual date of 23 Oct 01. In fact, on 18 June 01 AID requested FHIS to terminate the contract with DRC but it did not happen until 23 Oct 01. It was on 22 Oct 01

EXHIBIT E

P.O. Box 2323
Gulf Shores, AL 36547
Phone (334) 968-6815 (251)
Fax (334) 968-8752 (251)
E-mail – halc@gulftel.com

CALLAWAY & ASSOCIATES

www.governmentclaims.com

15330 S.W. 155 Ct.
Miami, FL 33187
Phone/Fax (305) 238-8595
E-mail – ewoexpert@aol.com

that USAID formally accepted the responsibility to negotiate liquidation of the contract directly with USAID. The contract was terminated for convenience the next date. It had been under suspension since 1 Mar 01.

D. Athanas continued saying that the claim was not "certified". He could not tell DRC what "certification" he was looking to be signed. DRC pointed out that in fact the proposal was certified by the subcontractors and DRC. He was shown the certification signed by each of the subcontractors and by DRC. DRC executed the Certification on Form AID 1440-3. When asked if he preferred the Certification on Form SF1436 for total cost proposals, he indicated that he would have to get back with us, as he did not have an answer. The discussion continued. It appears that his "real" problem is DRC's reservation of rights relative to post termination settlement expenses. DRC explained that we have no idea how long these expenses will continue and that the lack of a CO/TCO and lack of direction on disposition of termination inventory only exacerbates these costs. It was explained again that in spite of all our efforts, the meeting today was only the second meeting with USAID to directly discuss the Settlement Proposal. The first meeting was in Washington in the Spring with Jim Dzierwa. DRC encouraged Mr. Athanas to review the FAR in both Sections 49 and 31 concerning Post Termination expenses. It was explained that these are costs, which do not carry overhead or profit but are compensable and can be controlled to some extent by prompt and responsive actions on the part of the government.

E. The issue of whether to apply the Rules of the "Country Contracting Handbook" or the "FAR" was discussed. It does not matter to DRC and Athanas indicated that he would let us know on Friday the day after our meeting.

F. The issue of whom DRC should be negotiating with was discussed. Athanas indicated that he was the TCO but had no warrant. DRC asked how one could be a Contracting Officer without a warrant. He indicated that anything he prepared the CO would sign. This issue is important because this case has been passed around, ie Washington to Honduras, back to Washington and now back to Honduras. Who the individual is does not matter to DRC, we just want a responsible

CO/TCO who has a reasonable degree of familiarity with Construction Contract Terminations for Convenience.

G. The issue of the line items in the contract for Mobilization in the amount of $473,996.08 was discussed. DRC asked if it could receive payment for this item. Mr. Athanas agreed that we had in fact mobilized the contract. He also asked if DRC had billed FHIS for the mobilization. DRC gave him a copy of the bill and the bond. The request for payment was made 12 Feb 01. Mr. Athanas said he would give us an answer to this issue on the Tuesday following our meeting.

H. At the conclusion of the meeting Mr. Athanas advised that the RIG (Regional Inspector General) picked up the documents yesterday and will do an audit within the next 30 days.

This recap of the meeting was prepared by Hal Callaway of Callaway & Associates. A copy is provided to Mr. Athanas with the request to document any differences of opinions as to what was discussed. Please provide any changes by 30 Aug 02.

Hal Callaway
Phone 251-968-6815
Fax 251-968-8752
Email halc@gulftel.com