| Category | Submitted By DRC | Ineligible Costs | Unsupported Costs | Ref. |
|---|---|---|---|---|
| Bidding expense | 32,389 | 1,786 | 30,603 | Note 3; App. 5 |
| Subcontract – Cordica | 189,952 | | 189,952 | Note 4 |
| Subcontract – SERPIC | 136,704 | 5,095 | 131,613 | Note 5; App. 6 |
| Subcontract – GAP Associates | 32,111 | 1,511 | 30,599 | Note 6; App. 7 |
| Home office overhead | 106,964 | 88,192 | | Note 7; App. 8 |
| *Subtotal* | *$1,613,506* | *$1,061,099* | *$384,044* | |
| Profit (15 percent) | 242,025 | 159,165 | 57,607 | Note 8 |
| Addition error | 22 | 22 | | Note 9 |
| *Total* | *$1,855,553* | *$1,220,286* | *$441,651* | |

Notes:

1. Direct materials and labor expenses are detailed in the following table.

| Category | Amount |
|---|---|
| Materials | $87,496 |
| Payroll | 9,174 |
| Travel and transportation | 5,160 |
| Communications | 839 |
| Rent and utilities | 826 |
| Fuel and oil | 490 |
| Professional fees | 42,390 |
| Miscellaneous expenses | 64,794 |
| *Total* | *$211,169* |

We have classified $60,297 of these expenses as ineligible costs because: expenses were incurred after the contract suspension that were not needed to maintain a standby capability to reinitiate work if necessary ($3,535), bond premiums have not yet been paid by DRC and there is doubt over the amounts to be paid to the bond issuer ($56,594), personal entertainment costs were included in the claim ($64), one item included in the claim represented a refundable deposit rather than an expense ($167), and workers compensation insurance premiums should have been charged to contract 1A as a direct cost but were mistakenly included in the Honduras overhead cost pool (-$63). In addition, we classified $1,277 as unsupported costs because documentation needed to show what expenses were paid was not available. A list of questioned costs and the reasons why they were questioned is provided in Appendix 3.

2. Honduras overhead, representing the allocation of a pool of indirect costs to DRC's two contracts in Honduras, included the costs shown in the following table.

| Category | Amount |
|---|---|
| Indirect cost pool: | |
| Payroll | $799,104 |
| Transportation & travel | 335,690 |
| Communications | 133,161 |
| Rent & utilities | 359,595 |
| Freight | 5,988 |
| Fuel & oil | 52,153 |
| Repairs & maintenance | 43,853 |
| Depreciation | 238,912 |
| Professional fees | 728,310 |
| Insurance-general liability | 15,148 |
| Insurance auto | 9,602 |
| Licenses & fees | 2,255 |
| Gain (loss) on foreign exchange | (28,458) |
| Misc. expenses | 20,494 |
| Meetings-conferences | 5,306 |
| Office supplies-printing | 1,653 |
| Office supplies-others | 30,249 |
| Misc. expenses-others | 150 |
| Financial charges | 5 |
| Bank charges | 300 |
| *Total indirect cost pool* | *$2,753,470* |
| Allocation factor:<br>Contract 1A estimated amount: $8,373,931<br>Contract 1 estimated amount: $17,667,967<br>Contract 1A share based on estimated amounts:<br>$8,373,931/($8,373,931+$17,667,967)=0.322 | x 0.322 |
| *Subtotal* | *$886,617* |
| Arithmetic error: DRC used an allocation factor of .328 rather than the .322 factor that results from the estimated contract amounts above that were included in DRC's submission | 17,601 |
| *Honduras overhead indirect costs allocated to contract 1A termination claim* | *$904,218* |

The questioned Honduras overhead costs relate to two issues.

First, as further detailed in Appendix 4, the indirect cost pool of $2,753,470 included $2,133,423 in ineligible costs and $21,658 in unsupported expenses. Excluding these expenses, the indirect cost pool would have been $598,389.

Second, the allocation method used by DRC did not reasonably match indirect costs with the contracts that benefited from the indirect costs. DRC used the estimated amount of each contract to allocate costs to its two contracts in Honduras. However, the estimated contract amounts are not a reasonable measure of the extent to which the two contracts benefited from the indirect costs because contract 1A was suspended approximately two months after it was signed. As a result, costs under contract 1A will not even approach the estimated amount. We have classified all Honduras overhead expenses as ineligible

expenses since the method used to allocate these expenses to the two contracts was not reasonable.

DRC needs to propose an allocation method that reasonably reflects the extent to which the contracts benefited from the indirect costs. Two allocation bases that are used frequently to distribute indirect costs are (1) actual direct labor costs and (2) actual total costs.

3. Bidding expenses submitted by DRC are summarized in the following table.

| *Category* | *Amount* |
|---|---|
| Salaries and benefits | $30,206 |
| Photocopies | 1,786 |
| Professional fees | 398 |
| *Total* | *$32,389* |

Bidding expenses are normally recovered by including them in an indirect cost pool to be recovered on a pro-rata basis from all of a company's contracts. In contrast, in its termination claim, DRC is seeking recovery of bidding expenses as a direct cost. USAID/Honduras will need to decide whether to permit recovery of bidding expenses as direct charges to contract 1A. We have classified $30,603 of the amount claimed by DRC as unsupported expenses because documents such as timecards showing the amount of time employees spent on bid preparation tasks were not available. We have classified one charge of $1,786 as ineligible expenses because the same expense was already included in the direct materials and labor portion of DRC's termination claim. A list of all questioned costs and the reasons why they were questioned is provided in Appendix 5.

4. DRC asserts that it had a verbal subcontract with Cordica. The contract between FHIS and DRC requires the prior written approval of both FHIS and USAID for all subcontracts, but these required approvals were not obtained. In addition, DRC has not yet paid Cordica for the Cordica expenses it included in the termination claim. For these reasons, we are classifying all Cordica costs as unsupported costs. We attempted to review the supporting documentation for these costs but we were unable to gain access to the records due to litigation between Cordica and DRC in Honduras.

5. DRC asserts that it had a verbal subcontract with SERPIC. The contract between FHIS and DRC requires the prior written approval of both FHIS and USAID for all subcontracts, but these required approvals were not obtained. For this reason, we are classifying all SERPIC costs as unsupported costs, except for $5,095 in costs that were ineligible because they were incurred after the suspension of DRC's contract and were not necessary to maintain a standby capability to reinitiate work under the contract if necessary. Some individual costs included in this line item also lacked supporting documentation. Details on

these questioned costs and the reasons for questioning them are included in Appendix 6.

6. DRC asserts that it had a verbal subcontract with GAP Associates. The contract between FHIS and DRC requires the prior written approval of both FHIS and USAID for all subcontracts, but these required approvals were not obtained. In addition, DRC has not yet paid GAP Associates for the GAP Associates expenses that DRC included in its termination claim. For these reasons, we are classifying all GAP Associates costs as unsupported costs except for $1,511 in costs that were ineligible because they were incurred after the suspension of DRC's contract and were not necessary to maintain a standby capability to reinitiate work under the contract if necessary. Some individual costs included in this category also lacked supporting documentation. Details on these questioned costs and the reasons for questioning them are included in Appendix 7.

7. We were asked by USAID/Honduras to use the Eichleay method of computing home office overhead expenses. This method is commonly used in situations where, due to a contract suspension or delay, the contractor cannot generate sufficient revenue to absorb home office overhead costs. Applying this method results in a higher percentage rate of recovery of home office overhead costs than the 7.1 percent rate that DRC claimed. However, because the effect of the questioned costs discussed in notes 1 through 6 above is to reduce the cost base against which the rate is applied, the amount of allocable home office overhead costs is less than DRC claimed. We have classified the $88,192 difference between our calculation of allocable home office overhead costs and the amount claimed by DRC as ineligible costs. The calculations supporting the home office overhead allocation are provided in Appendix 8.

8. We have classified $159,165 of the profit line item as ineligible costs and $57,607 as unsupported costs because of the effect of the ineligible and unsupported costs discussed above on profit, which is calculated as a percentage. We have not performed any procedures to examine the reasonableness of the 15 percent profit factor proposed by DRC.

9. There was a $22 arithmetic error between the total termination claim presented by DRC, which was $1,855,553, and the total of the line items making up the claim, which was $1,855,531.

**Recommendation No. 1: We recommend that USAID/ Honduras negotiate with Disaster Reconstruction, Inc. to determine the amount to be paid by USAID under contract 1A.**

**Management Comments and Our Evaluation**

USAID/Honduras did not provide comments on our draft audit report. DRC did provide a response to the draft report to both our office and USAID/Honduras. (See Appendix 2.) After reviewing DRC's comments, which expressed disagreement with many of the findings and conclusions in the report, we continue to believe that the facts presented in this audit report are correct.

## Scope and Methodology

### Scope

The Regional Inspector General/San Salvador conducted this audit, in accordance with generally accepted government auditing standards, to determine whether the contract 1A termination claim submitted by Disaster Reconstruction, Inc. (DRC) was reasonable, allocable, and allowable in accordance with the contract terms. Our audit, and the termination claim itself, covered the period from December 29, 2000 through October 31, 2001.

The audit was conducted at DRC's offices in Tegucigalpa, Honduras and Mobile, Alabama from September 4, 2002 through September 27, 2002.

We did not attempt to obtain an understanding of DRC's system of internal control or determine whether the system of internal control was operating as intended. This was because, in our judgment, it was more efficient to rely on substantive tests of transactions to determine whether costs included in the termination claim were reasonable, allocable, and necessary.

The audit was subject to a scope impairment in that the books and records kept by Cordica, an independent organization with which DRC asserts it had a subcontract, were not available to us because of litigation between Cordica and DRC in Honduras. In addition, the scope of the audit was limited in that we did not perform any procedures to verify the amount of construction work performed by DRC or its subcontractors or to verify that the work was in accordance with established plans and specifications. We did not perform such procedures because, due to the nature of water and sanitation infrastructure, which is normally installed underground, little of the work performed would be readily accessible for inspection. In addition, FHIS employed a U.S. engineering firm to supervise the work performed by DRC and its subcontractors and certify compliance with established plans and specifications. Finally, in calculating the amount of home office overhead allocable to contract 1A, we used information from DRC's unaudited financial statements for the ten months ending October 31, 2002. We relied on this information because it would not have been cost effective to audit the roughly $50 million in expenses in these financial statements given the relatively minor effect any adjustments would have had on the home office overhead costs allocable to contract 1A. (See Appendix 8.)

### Methodology

In order to audit the costs submitted by DRC as part of its termination claim, we reviewed the supporting documentation submitted by DRC with the claim, available accounting books and records, and supporting documentation such as canceled checks, receipts, and receiving reports. We reviewed all costs that, in the aggregate, could have a material effect on the amount of the termination claim. In determining whether costs were reasonable, allocable and allowable, we

made reference to the terms of the contract with DRC. Because the contract did not include any cost principles, we used the Federal Acquisition Regulations as a general guide to what costs might be considered reasonable and allocable to the contract.

It should be noted that FHIS, in its suspension notice sent to DRC on March 1, 2001, instructed DRC not to incur any new expenses or make any new commitments after that date. Since it was conceivable that FHIS could have asked DRC to reinitiate work under the contract, DRC arguably had a need to maintain its staff largely intact to maintain a standby capability to reinitiate work if necessary. Therefore, we generally did not question staff and support costs during the suspension period, although we did question new expenses that were not necessary to maintain a standby capability. Subsequent correspondence in May and June 2001, including USAID's withdrawal of its approval for contract 1A on May 7, 2001, made it clear that work on the contract would not be reinitiated. Therefore, we considered that DRC should have demobilized its contract 1A operations after June 30, 2001.

In answering the audit objective, we considered that questioned costs (ineligible and unsupported costs) of 5 percent or less of the amount audited would result in a unqualified (positive) answer to the audit objective, questioned costs of 20 percent or less would result in a qualified answer to the audit objective, and questioned costs in excess of 20 percent would result in an adverse (negative) answer to the audit objective.

DRC, Inc.

Construction & Disaster Services Worldwide

# RESPONSE TO THE:

Draft Report, Audit of the Contract 1A Termination Claim

Audit Report No. 1-521-03-xxx-F

**Appendix 2**

DRC, Inc.

Construction & Disaster Services Worldwide

November 21, 2002

**MEMORANDUM**

**FOR:** USAID/San Salvador Regional Inspector General, Timothy E. Cox

**FROM:** Murray Farmer, Regional Project Manager,
DRC, Inc. Tegucigalpa, Honduras Central America

**SUBJECT:** DRC Draft Report Response, Audit of the Contract 1A Termination Claim Submitted by Disaster Reconstruction, Inc. (DRC) (Report No. 1-521-03-xxx-F)

This memorandum is our response to your Draft Report dated October 11, 2002.

We appreciate you agreeing to provide us the additional week to prepare our response and the thoroughness of your work. We do have, however, several significant differences as we have set forth herein. We would appreciate an opportunity to meet with you and with a warranted Contracting Officer at your earliest convenience.

Upon publishing of your final report, we would appreciate a copy once it has been issued.

**Appendix 2**

**Table of Contents**


| | |
|---|---|
| Introduction | 3 |
| Draft Report Response | 4 |
| Was the contract 1A termination claim submitted by Disaster Reconstruction, Inc. (DRC) reasonable, allocable, and allowable in accordance with the contract terms? | |
| Appendix 1 -- Bidding Expenses | 50 |
| Appendix 2 – Costs for Subcontract -- SERPIC | 57 |
| Appendix 3 – Costs for Subcontract – GAP | 66 |
| Appendix 4 -- Honduras Overhead Calculation | 33 |

**Appendix 2**

**Introduction**

DRC presented its claim for the 1-A Contract Termination to USAID on January 21, 2002 This report is in response to the USAID Audit Draft Report issued by USAID/San Salvador Regional Inspector General, Timothy E. Cox on October 11, 2002. The draft report findings are based on an audit performed in the offices of DRC during September of 2002.

**DRC Draft Report Response**

DRC was contracted by FHIS on December 29, 2000, and the work was subsequently suspended on March 1, 2001. The suspension of work was issued as the USAID temporarily suspended its funding to FHIS for the contract. In accordance with Article E of its contract titled Cancellation Resources, DRC discontinued furtherance of its contract work and remained on Standby to protect the work sites, equipment and materials; and to remain prepared to reinitiate the work upon the lifting of the suspension.

DRC's responsibility and liability under this contract did not end and was not limited by the suspension of the contract on March 1, 2002, therefore, DRC does not agree with the Draft Report findings. The USAID Audit stated:

> "The majority of the $1,855,553 contract 1A termination claim submitted by DRC was not reasonable, allocable, and allowable. The audit disclosed $1,220,286 in ineligible costs (costs that are not reasonable, allocable, or allowable) and $441,651 in unsupported costs (costs that are not supported by sufficient documentation to permit an informed judgment on whether the costs are reasonable, allocable, and allowable, or that lack required approvals)."

The report states that the contract was suspended only two months after it was signed, therefore, as a result, costs under the contract 1-A will not even approach the estimated amount. In fact, the Contract was suspended in March of 2001, approximately 2 months after it was signed, and almost 20% of the contractual time period. As this was the mobilization and startup period, when costs accelerate, the costs requested of $1,855,553 when compared with the contract cost of $8,371,931, equal to only 22%, and are very reasonable.

The contract was not terminated for Convenience of the Contract until October 23, 2001 a full ten months after the contract signing and a period equal to 83% of the contractual period.

Contrary to the thought of the USAID Audit, DRC was required to expend funds throughout and including until October 23, 2002.

DRC had travel expenses of multiple personnel traveling between Washington D.C., Mobile, Alabama and Tegucigalpa, Honduras constantly between the date of suspension and the final termination.

In regard to the subcontractors and works on the sites, the arbitrary date of June 30, 2001 is agreed. In regards to the coordination of materials and maintenance thereof, these costs continued through October 2002, a full 22 months after the contract was signed. DRC's contractual responsibility and liability with FHIS did not end until the mutual termination agreement was signed on October 23, 2001, DRC's full responsibility with the 1-A suspension and termination did not end until the materials held were transferred to FHIS in October of 2002, a year after the mutual termination agreement.

**Honduras Overhead**

Your suggestions about our overhead allocations are appreciated. Our Honduras field office did allocate certain direct expenses incorrectly as overhead. DRC has reworked its overhead calculation and has removed all indirect costs that could be identified to our Group 1 project that was included in our original overhead cost pool. All indirect cost that could not be identified to a single cost objective remained in our overhead pool. As a result, our reworked overhead pool of unallocable multi-contract indirect cost was thereby reduced from $2,753,469.82 to $1,696,755.33.

DRC has removed all identifiable overhead cost. Our removal of identifiable indirect cost more reasonably reflects which contract benefited from the indirect cost.

As proposed by the Auditing staff we adjusted asset depreciation from one year to five years, thus, lowering the overhead allocated towards 1-A.

Total overhead to be allocated to the 1-A contract is $546,355.21 based on a 32.2% allocation percentage.

**DRC Home Office Overhead**

DRC originally submitted its overhead for the home office as a percentage (7.1%) of the total costs incurred. This was done simply in the interest of hoping to settle this matter as quickly as possible.

The auditors have advised that the contracting officer prefers the use of the Eichleay Formula and we certainly agree that it is more equitable - when applied properly. The Eichleay Formula is designed to compensate a contractor for a

contract that has been suspended and then completed. Thus the "Total Billings" part of the formula includes all change orders plus the original contract amount. Secondly, the "Days of Performance" includes the original contract duration plus the number of days the contract was suspended.

The Eichleay Formula correctly applied would be as follows:

| | | | |
|---|---|---|---|
| 1. | Total Contract Billings (i.e. Contract Amount) | = | 8,373,931.00 |
| 2. | Total Company Billings | = | 47,321,373.00 |
| 3. | Total Company Overhead | = | 3,312,646.00 |

4. Period of Performance:

   Original Contract Performance Period - 332 days

   Period of Suspension 3/1/01 - 10/23/01 - 237 days

   Total Period of Performance 332 + 237 = 569 days

5. Compensable suspension or delay - 296 days

The project was suspended 237 days. Work was performed from 1/1/01 - 2/28/01, or 59 days. (DRC is not asking for the 7.1% of cost incurred for home office overhead so the total request is for 237 days plus 59 days, or 296 days.) Calculations are as follows:

1. $\frac{8,373,931.00}{47,321,373.00} \times 3,312,646.00 = 586,338.00$

   $\frac{586,338.00}{569} = 1,030.00/\text{day}$

   $1030.00 x 296 days = $304,880.00

**DRC Contractual Responsibility and Liability**

Throughout the audit report it states that USAID notified FHIS in May and June of 2001 of the suspension, therefore, USAID Auditors consider that DRC should have demobilized its contract 1-A operations after June 30, 2001.

This above referenced communications are internal and are between FHIS and USAID. DRC was not copied in them or notified of theses communications until late August of 2001. DRC's contractual obligations were not terminated until October 23, 2001.

**DRC Bidding Expenses**

DRC bidding expenses were prepared by Oscar Callejas, DRC's head Engineer. Mr. Callejas is a Civil Engineer and has prepared many bids, and solicitations during his professional career. Mr. Callejas is a costing expert, and he has worked with the Honduran Government (FHIS) providing engineering services.

DRC requested payment for bidding expenses based on Mr. Callejas's observations and experience. The reason the expenses were not prepared until after the suspension is because DRC did not deem it necessary to prepare costing aspects during the suspension because we were advised we would receive an order to restart the work. The DRC, FHIS and USAID mutual termination did not take place until almost a year after the bid was prepared and that is why there is such a large time between bid preparation and Mr. Callejas report to Mr. Murray Farmer.

DRC presented these expenses for reimbursement as direct cost, not as an overhead calculation because an overhead calculation would not reasonably reflect the cost incurred in preparing the bid.

These bidding expenses and other cost prior to our contract award are the type of expenses coverd by the "mobilization" line item under this contract that has never been paid. If this cost is denied, we reserve the right to include the entire line item in a subsequent proposal.

Salaries and professional fees were previously calculated on current rates as of December 2001. The amounts were adjusted accordingly to reflect the correct amount as per observations of the auditors.

**Subcontracting**

USAID claims that DRC did not have subcontracting previously approved and in writing by USAID and FHIS, therefore, all expenses incurred by Subcontractors are shown as "unsupported." We disagree strongly with this conclusion.

The contract between DRC and FHIS clearly allows subcontracting up to 40% of the contract value which requisite DRC met, with only the approval of the DIM. This approval is not a prerequisite of subcontracting, it only states that DRC must obtain this approval during the course of the projects execution. The signed contractual clause states:

> "Clause 28, Transfer & Subcontracting, the contractor may subcontract up to a maximum of 40% of the amount of the execution of work, having to count with the due approval of DIM and additionally must have writing that of its bank or insurance company (Bonds), their binding liability with respect to the subcontractor. The contractor will not transfer its obligations of complying with what is stipulated in this contract, nor of subcontracting to third parties without counting with the previous consent and writing from FHIS and USAID."

As one can see the contractor may subcontract up to a maximum of 40% of the amount of the execution of work, having to count with the due approval of DIM and additionally must have writing that of its bank or insurance company (Bonds), their binding liability with respect to the subcontractor.

The previous written authorization is only necessary if the contractor wishes to transfer its rights over to another contractor or subcontractor, transferring more then 40% of the contracts value. DRC executed this clause requesting the authorization to subcontract 75% of the contracts value while noting it was currently subcontracting at 34.1%, letter dated February 14, 2001,

In fact, DRC would like to reiterate that the contract was suspended before any approvals could be processed. DRC requested approval to subcontract to the DIM and FHIS on several occasions, December 27, January 29, February 9, and February 14, 2001, without response. In the Group 1 contract, it took FHIS and USAID 10 months to approve subcontractors in writing. Waiting FHIS and USAID written approvals is not reasonable and is certainly not contemplated in either contract. The conclusion of the auditors is not reasonable and has no basis in the contract.

**After Suspension Expenses**

DRC's responsibility and expenses did not end March 1, 2001 with the sending of the suspension letter. A standby force was contractually required for eight months until the termination, and until the eventual demobilization of the project, this force was necessary.

DRC could not abandon its workers, project sites, creditors or assets acquired to execute the project as assumed by USAID Auditors. FHIS even gave DRC direct orders after the suspension to close all open holes and make all sites safe for the habitants of the community. Expenses after the suspension are reasonable, allocable, and allowable in accordance with the contract terms and DRC responsibilities.

**Appendix 2**

## Conclusion

Many of the conclusions made in the auditor's draft report are not reasonable and unacceptable. The overhead allocation position was reasonable and the direct expenses included therein have been removed and reallocated. Some conclusions are unacceptable such as: subcontracting expenses ineligible, removal of salaries due to no time cards, expenses just because they were after the suspension, and removal of cable television for our employees (USAID Classification of "Entertainment"), who are living in obviously remote and extremely dangerous areas is not, we believe reasonable.

We would appreciate a meeting between USAID Audit and a USAID warranted Contracting Officer prior to any final decisions in this matter. We greatly appreciate USAID for taking their time to review and incorporate our comments in their Final Audit Report. DRC is available for USAID if any questions or clarifications are necessary.

**Appendix 2**

| Listing of Questioned Costs for Direct Materials and Labor | | | |
|---|---|---|---|
| **Expense** | **Ineligible Costs** | **Unsupported Costs** | **Reasons for Questioned Costs** |
| House lease | | $833 | No copy of the lease was available. The actual amount of the check is Lps 15,500.00 in payment for Gary's 6 months rent and deposit and not refundable because the contract was suspended before the contract expired. Guanaja is in the Bay island and expensive Gary stayed in the hotel during his first week and the rate is $100.00/day, (Lps.1,500.00). |
| House lease | | 400 | The lease and canceled check were not available. The actual amount of the check is Lps.9,000.00, in payment of Carlos for 3 months rental in Sonaguera The check is missing but I have copy of the deposit and the bank statement where the amount debited. |
| Deposit on house lease | $167 | | This was a refundable deposit rather than an expense. The lease was cancelled before the contract term, that the reason it was not refundable. |
| Cable television installation and deposit for an employee's apartment | 27 | | These are personal entertainment expenses. DRC, policies for expatriate personnel is to pay housing expenses including cable. |
| Cable television installation | 11 | | These are personal entertainment expenses. DRC, policies for expatriate personnel is to pay housing expenses including cable. |
| Cable television service | 13 | | These are personal entertainment expenses. DRC, policies for expatriate personnel is to pay housing expenses including cable. |
| Cable television service | 13 | | These are personal entertainment expenses. DRC, policies for expatriate personnel is to pay housing expenses including cable. |
| Telephone installation | 267 | | This expense was incurred after DRC's contract was suspended. In addition, the expense was paid directly to DRC's accountant in Honduras and no receipt is available. The telephone was requested before the suspension of project. |
| Design Mix Concrete and Soil Gradation Samples | 209 | | This expense was incurred after DRC's contract was suspended. It was requested before suspension of project. |
| Translation services | 368 | | This expense was incurred after DRC's contract was suspended. Requested by the main office in order to prepare the closing report. |
| Translation services | 355 | | This expense was incurred after DRC's contract was suspended. Requested by the main office in order to prepare the closing report. |
| Translation services | 277 | | This expense was incurred after DRC's contract was suspended. Requested by the main office in order to prepare the closing report. |
| Translation services | 100 | | This expense was incurred after DRC's contract was suspended. Requested by the main office in order to prepare the closing report. |
| Translation services | 74 | | This expense was incurred after DRC's contract was suspended. Requested by the main office in order to prepare the closing report. |
| Translation services | 453 | | This expense was incurred after DRC's contract was suspended. Requested by the main office in order to prepare the closing report. |
| Translation services | 300 | | This expense was incurred after DRC's contract was suspended. Requested by the main office in order to prepare the closing report. |
| Blueprints and photocopies | 136 | | This expense was incurred after DRC's contract was suspended. Requested by the main office in order to prepare the closing report. |
| Translation services | 802 | | This expense was incurred after DRC's contract was suspended. Requested by the main office in order to prepare the closing report. |
| Performance bond | 50,512 | | DRC has not paid this expense. The company that issued the performance bond is reportedly in bankruptcy and DRC is not sure how much if anything will be paid for the performance bond. DRC's liability for this expense has not changed. |
| Performance bond | 6,082 | | DRC has not paid this expense. The company that issued |

**Appendix 2**

***Listing of Questioned Costs for Direct Materials and Labor***

| *Expense* | *Ineligible Costs* | *Unsupported Costs* | *Reasons for Questioned Costs* |
|---|---|---|---|
| | | | the performance bond is reportedly in bankruptcy DRC is not sure how much if anything will be paid for the performance bond. DRC's liability for this expense has not changed |
| Meals and telephone | | 43 | Supporting documents were not sufficient to show what was being purchased. is a third category service, is used to received only a handwritten receive. |
| Transportation expenses | 59 | | This expense was incurred after DRC's contract was suspended. He was traveling for preparing the final inventory. |
| Car wash | 5 | | This expense was incurred after DRC's contract was suspended. Maintenance |
| Airport tax and parking fees | 5 | | This expense was incurred after DRC's contract was suspended. He was traveling for preparing the final inventory |
| Car rental | 50 | | This expense was incurred after DRC's contract was suspended. He was traveling for preparing the final inventory. |
| Airport tax for supervisory visit | 3 | | This expense was incurred after DRC's contract was suspended. The Zone Manager was inspected the stopped work. |
| Airport tax | 25 | | This expense was incurred after DRC's contract was suspended. Airport tax for one week vacations. |
| Airport tax and parking fees | 47 | | This expense was incurred after DRC's contract was suspended. In addition, no receipt was available. Supported by the flight ticket bill. |
| Airport tax and parking fees | | 1 | Check and receipt are missing.Local flight tax and supported by flight ticket bill |
| Workman's compensation insurance premiums | (63) | | These costs are allocable as direct charges to contract 1A but were mistakenly included in the Honduras overhead pool. |
| *Totals* | *$60,297* | *$1,277* | |

**Appendix 2**

[Pages 23 and 24 are blank pages in DRC's response.]

## Appendix 2

| Listing of Questioned Costs for Bidding Expenses | | | | |
|---|---|---|---|---|
| **Expense** | **Submitted By DRC** | **Ineligible Costs** | **Unsupported Costs** | **Reasons for Questioned Costs** |
| Salary for J. L. Martinez, September 2000 | $116 | | $116 | No timecard or other support for the amount of time spent on bid preparation tasks was available. The allocation of time to bid preparation tasks was an estimate made one year after the bid was submitted.) DRC, Inc., does not use a timecard, it was supported by the bank payment of payroll. |
| Salary for Y. W. Hernandez R., September 2000 | 7 | | 7 | No timecard or other support for the amount of time spent on bid preparation tasks was available. The allocation of time to bid preparation tasks was an estimate made one year after the bid was submitted. DRC, Inc., does not use a timecard, it was supported by the bank payment of payroll |
| Salary for R. Vasquez, September 2000 | 33 | | 33 | No timecard or other support for the amount of time spent on bid preparation tasks was available. The allocation of time to bid preparation tasks was an estimate made one year after the bid was submitted. In addition, the employee had no purchasing experience but was hired as the purchasing manager. DRC, Inc., does not use a timecard, it was supported by the bank payment of payroll. |
| Salary for D. Izaguirre, September 2000 | 10 | | 10 | No timecard or other support for the amount of time spent on bid preparation tasks was available. The allocation of time to bid preparation tasks was an estimate made one year after the bid was submitted. DRC, Inc., does not use a timecard, it was supported by the bank payment of payroll. |
| Salary for J. Gomez, September 2000 | 11 | | 11 | No timecard or other support for the amount of time spent on bid preparation tasks was.available. The allocation of time to bid preparation tasks was an estimate made one year after the bid was submitted. DRC, Inc., does not use a timecard, it was supported by the bank payment of payroll. |
| Benefits for September 2000 | 44 | | 44 | No timecard or other support for the amount of time spent on bid preparation tasks was available. The allocation of time to bid preparation tasks was an estimate made one year after the bid was submitted. DRC, Inc., does not use a timecard, it was supported by the bank payment of payroll |
| Engineering group (O. Callejas), September 2000 | 2,238 | | 2,238 | No timecard or other support for the amount of time spent on bid preparation tasks was available. The allocation of time to bid preparation tasks was an estimate made one year after the bid was submitted. In addition, the allocation was based on 25 percent of a monthly salary of $8,952 rather than 25 percent of the monthly salary of $7,957 actually paid, for a difference of $249. DRC, Inc., does not use a timecard, it was supported by the bank payment of |

**Appendix 2**

| Listing of Questioned Costs for Bidding Expenses | | | | |
|---|---|---|---|---|
| Expense | Submitted By DRC | Ineligible Costs | Unsupported Costs | Reasons for Questioned Costs |
| | | | | payroll |
| Salary for J. L. Martinez, October 2000 | 464 | | 464 | No contract with the employee and no timecard or other support for the amount of time spent on bid preparation tasks was available. The allocation of time to bid preparation tasks was an estimate made one year after the bid was submitted.<br>DRC, Inc., does not use a timecard, it was supported by the bank payment of payroll |
| Salary for Y. W. Hernandez R., October 2000 | 33 | | 33 | No timecard or other support for the amount of time spent on bid preparation tasks was available. The allocation of time to bid preparation tasks was an estimate made one year after the bid was submitted. In addition, the charge of $33 for October is $7 more than the amount DRC estimated was allocable to bid preparation tasks.<br>DRC, Inc., does not use a timecard, it was supported by the labor contract and the bank payment of payroll. |
| Salary for R. Vasquez, October 2000 | 133 | | 133 | No timecard or other support for the amount of time spent on bid preparation tasks was available. The allocation of time to bid preparation tasks was an estimate made one year after the bid was submitted. In addition, the employee had no purchasing experience but was hired as the purchasing manager. Finally, the charge of $133 for October was based on an incorrect salary amount. Computing the charge on the correct salary results in a charge of $119, for a difference of $14.<br>DRC, Inc., does not use a timecard, it was supported by the labor contract and the bank payment of payroll. |
| Salary for D. Izaguirre, October 2000 | 38 | | 38 | No timecard or other support for the amount of time spent on bid preparation tasks was available. The allocation of time to bid preparation tasks was an estimate made one year after the bid was submitted. In addition, the charge of $38 for October was based on an incorrect salary amount. Computing the charge on the actual salary paid results in a charge of $27, for a difference of $11.<br>DRC, Inc., does not use a timecard, it was supported by the labor contract and the bank payment of payroll. |
| Salary for J. Gomez, October 2000 | 46 | | 46 | No timecard or other support for the amount of time spent on bid preparation tasks was available. The allocation of time to bid preparation tasks was an estimate made one year after the bid was submitted. In addition, the charge of $46 for October was based on an incorrect salary amount. Computing the charge on the actual salary paid results in a charge of $30, for a difference of $16.<br>DRC, Inc., does not use a timecard, it was supported by the bank payment of payroll. |
| Benefits for October 2000 | 179 | | 179 | No timecard or other support for the |

**Appendix 2**

| Listing of Questioned Costs for Bidding Expenses | | | | |
|---|---|---|---|---|
| ***Expense*** | ***Submitted By DRC*** | ***Ineligible Costs*** | ***Unsupported Costs*** | ***Reasons for Questioned Costs*** |
| | | | | amount of time spent on bid preparation tasks was available. The allocation of time to bid preparation tasks was an estimate made one year after the bid was submitted. In addition, computing benefits based on the correct salary amounts discussed above would result in a charge of $167, for a difference of $12. DRC, inc., does not use a timecard, it was supported by the labor contract and the bank payment of payroll. |
| Engineering group (O. Callejas), October 2000 | 8,952 | | 8,952 | No timecard or other support for the amount of time spent on bid preparation tasks was available. The allocation of time to bid preparation tasks was an estimate made one year after the bid was submitted. In addition, the charge of $8,952 for October was based on an incorrect salary amount. The actual salary paid was $7,957, for a difference of $994. DRC, Inc., does not use a timecard, it was supported by the labor contract and the bank payment of payroll. |
| Salary for J. L. Martinez, November 2000 | 464 | | 464 | No contract with the employee and no timecard or other support for the amount of time spent on bid preparation tasks was available. The allocation of time to bid preparation tasks was an estimate made one year after the bid was submitted. DRC, inc., does not use a timecard, it was supported by the labor contract and the bank payment of payroll. |
| Salary for Y. W. Hernandez R., November 2000 | 33 | | 33 | No timecard or other support for the amount of time spent on bid preparation tasks was available. The allocation of time to bid preparation tasks was an estimate made one year after the bid was submitted. In addition, the charge of $33 for November is $7 more than the amount DRC estimated was allocable to bid preparation tasks. DRC, Inc., does not use a timecard, it was supported by the labor contract and the bank payment of payroll. |
| Salary for R. Vasquez, November 2000 | 133 | | 133 | No timecard or other support for the amount of time spent on bid preparation tasks was available. The allocation of time to bid preparation tasks was an estimate made one year after the bid was submitted. In addition, the employee had no purchasing experience but was hired as the purchasing manager. Finally, the charge of $133 for November was based on an incorrect salary amount. Computing the charge on the correct salary specified in the employee's contract results in a charge of $119, for a difference of $14. DRC, Inc., does not use a timecard, it was supported by the labor contract and the bank payment of payroll. |
| Salary for D. Izaguirre, November 2000 | 38 | | 38 | No timecard or other support for the amount of time spent on bid preparation tasks was available. The allocation of time to bid preparation tasks was an |

**Appendix 2**

| Listing of Questioned Costs for Bidding Expenses | | | | |
|---|---|---|---|---|
| ***Expense*** | ***Submitted By DRC*** | ***Ineligible Costs*** | ***Unsupported Costs*** | ***Reasons for Questioned Costs*** |
| | | | | estimate made one year after the bid was submitted. In addition, the charge of $38 for November was based on an incorrect salary amount. Computing. the charge on the actual salary paid results in a charge of $27, for a difference of $11. DRC. Inc., does not use a timecard. It was supported by the labor contract and the bank payment of payroll. |
| Salary for J. Gomez, November 2000 | 46 | | 46 | No timecard or other support for the amount of time spent on bid preparation tasks was available. The allocation of time to bid preparation tasks was an estimate made one year after the bid was submitted. In addition, the charge of $46 for November was based on an incorrect salary amount. Computing the charge on the actual salary paid results in a charge of $30, for a difference of $16. DRC, Inc., does not use a timecard. It was supported by the labor contract and the bank payment of payroll. |
| Benefits for November 2000 | 179 | | 179 | No timecard or other support for the amount of time spent on bid preparation tasks was available. The allocation of time to bid preparation tasks was an estimate made one year after the bid was submitted. In addition, computing benefits based on the correct salary amounts discussed above would result in a charge of $167, for a difference of $12. DRC, Inc., does not use a timecard. It was supported by the labor contract and the bank payment of payroll.. |
| Engineering group (O. Callejas), November 2000 | 8,952 | | 8,952 | No timecard or other support for the amount of time spent on bid preparation tasks was available. The allocation of time to bid preparation tasks was an estimate made one year after the bid was submitted. In addition, the charge of $8,952 for November was based on an incorrect salary amount. The actual salary paid was $7,957, for a difference of $994. DRC, Inc., does not use a timecard. his professional fees are supported by his Contract, it includes overtime and weekend working time not included at the original contract.. |
| Salary for J. L. Martinez, December 2000 | 279 | | 279 | No contract with the employee and no timecard or other support for the amount of time spent on bid preparation tasks was available. The allocation of time to bid preparation tasks was an estimate made one year after the bid was submitted. DRC, Inc., does not use a timecard, It was supported by the labor contract and the bank payment of payroll. |
| Salary for Y. W. Hernandez R., December 2000 | 21 | | 21 | No timecard or other support for the amount of time spent on bid preparation tasks was available. The allocation of time to bid preparation tasks was an estimate made one year after the bid was submitted. In addition, the allocation estimate assumed that 80 percent of the days in December were |

**Appendix 2**

| Listing of Questioned Costs for Bidding Expenses | | | | |
|---|---|---|---|---|
| *Expense* | *Submitted By DRC* | *Ineligible Costs* | *Unsupported Costs* | *Reasons for Questioned Costs* |
| | | | | spent on bid preparation (in fact, the bid was submitted on December 20, and 20 days divided by 31 days yields 65 percent). Substituting 65 percent for 80 percent yields an estimate of $17, or $5 less than the amount shown. DRC, Inc., does not use a timecard, it was supported by the labor contract and the bank payment of payroll. |
| Salary for R. Vasquez, December 2000 | 106 | | 106 | No timecard or other support for the amount of time spent on bid preparation tasks was available. The allocation of time to bid preparation tasks was an estimate made one year after the bid was submitted. In addition, the employee had no purchasing experience but was hired as the purchasing manager. In addition, the allocation estimate assumed that 80 percent of the days in December were spent on bid preparation (in fact, the bid was submitted on December 20, and 20 days divided by 31 days yields 65 percent). Finally, an incorrect salary amount was used. Using the correct salary amount and substituting 65 percent for 80 percent yields an estimate of $77, or $29 less than the amount shown. DRC, inc., does not use a timecard, it was supported by the labor contract and the bank payment of payroll. |
| Salary for D. Izaguirre, December 2000 | 31 | | 31 | No timecard or other support for the amount of time spent on bid preparation tasks was available. The allocation of time to bid preparation tasks was an estimate made one year after the bid was submitted. In addition, the allocation estimate assumed that 80 percent of the days in December were spent on bid preparation (in fact, the bid was submitted on December 20, and 20 days divided by 31 days yields 65 percent). Finally, an incorrect salary amount was used. Using the correct salary amount and substituting 65 percent for 80 percent yields an estimate of $17, or $14 less than the amount shown.DRC, Inc., does not use a timecard, it was supported by the contract and the bank payment of payroll |
| Salary for J. Gomez, December 2000 | 279 | | 279 | No timecard or other support for the amount of time spent on bid preparation tasks was available. The allocation of time to bid preparation tasks was an estimate made one year after the bid was submitted. In addition, the allocation estimate used an incorrect salary amount and assumed that 80 percent of the days in December were spent on bid preparation (in fact, the bid was submitted on December 20, and 20 days divided by 31 days yields 65 percent). Correcting these errors yields an estimate of $19, or $260 less than the amount shown.DRC, Inc., does not use a timecard, it was supported by labor contract and the bank payment of |

## Appendix 2

| Expense | Submitted By DRC | Ineligible Costs | Unsupported Costs | Reasons for Questioned Costs |
|---|---|---|---|---|
| | | | | payroll |
| Benefits for December 2000 | 179 | | 179 | No timecard or other support for the amount of time spent on bid preparation tasks was available. The allocation of time to bid preparation tasks was an estimate made one year after the bid was submitted. In addition, computing benefits based on the correct salary amounts discussed above would result in a charge of $102, or $77 less than the amount shown.DRC, Inc., does not use a timecard, it was supported by the bank payment of payroll. |
| Engineering group (O. Callejas), December 2000 | 7,161 | | 7,161 | No timecard or other support for the amount of time spent on bid preparation tasks was available. The allocation of time to bid preparation tasks was an estimate made one year after the bid was submitted. In addition, the allocation estimate used an incorrect salary amount and assumed that 80 percent of the days in December were spent on bid preparation (in fact, the bid was submitted on December 20, and 20 days divided by 31 days yields 65 percent). Correcting these errors yields an estimate of $5,172, or $1,989 less than the amount shown. DRC, Inc., does not use a timecard, it was supported by the bank payment of payroll |
| Preparation of bid documents by M. Pineda | 398 | | 398 | No evidence of amount paid to M. Pineda was available. Receipt found and will be presented. |
| ARTEC photocopies | 1,786 | $1,786 | | Duplicate charge, also charged under direct materials line item. |
| Bid signing trip by S. Vogle and J. Sloke | 1,794 | 1,794 | | Charges represent a "bid signing trip" but travel was performed in late January 2001, after the bid was submitted and the contract was signed. Sid Vogel presented his expense report at the end of January. |
| Math error in DRC submission | (1,794) | (1,794) | | |
| *Totals* | *$32,389* | *$1,786* | *$30,603* | |

*Listing of Questioned Costs for Bidding Expenses*

**Appendix 2**

| Listing of Questioned Costs for Subcontract – SERPIC | | | | |
|---|---|---|---|---|
| *Expense* | *Submitted By DRC* | *Ineligible Costs* | *Unsupported Costs* | *Reasons for Questioned Costs* |
| Various costs | $135 | | $135 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. In addition, with the exception of $19 included in this line item, the available supporting documentation was not sufficient to show how the expenses benefited the subcontract.Clause 28th, of the Contract permits the 40% of subcontracting. |
| Various costs | 122 | | 122 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. In addition, this line item included taxes of $9 and $24 of gasoline and food expenses without documentation to show how they benefited the subcontract. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Various costs | 335 | | 335 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. In addition, this line item included $227 in car, food, and gasoline expenses that lacked documentation showing how they benefited the subcontract. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Various costs | 39 | | 39 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. In addition, this line item included $25 in gasoline expenses that lacked documentation showing how they benefited the subcontract. Clause 28th, of the Contract permits the 40% of subcontracting |
| Various costs | 47 | | 47 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Payroll and food | 2,323 | | 2,323 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also, for $671 in food expenses, there was no evidence that the food was received. Clause 28th, of the Contract permits the 40% percent of subcontracting. |
| Payroll and car rental | 3,919 | | 3,919 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. In addition, this line item included $597 for cars rented from SERPIC employees with no evidence of the type of car rented, the reasonableness of the rate, or why the rental was necessary. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Various costs | 116 | | 116 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also includes $83 for gasoline with no indication of what vehicle was fueled or the purpose of the trip. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Various costs | 183 | | 183 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also, includes $119 in |

**Appendix 2**

| Listing of Questioned Costs for Subcontract – SERPIC | | | | |
|---|---|---|---|---|
| **Expense** | **Submitted By DRC** | **Ineligible Costs** | **Unsupported Costs** | **Reasons for Questioned Costs** |
| | | | | gasoline with no indication of what vehicle was fueled. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Various costs | 250 | | 250 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Includes $201 for gasoline, hotel, and food expense that lacked documentation that the expenses benefited the subcontract. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Purchase of wood | 487 | | 487 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Warehouse rental | 974 | 515 | 459 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also, this line item includes $460 for a refundable deposit and $55 in sales taxes. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Various costs | 214 | | 214 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. In addition, no documentation was available to support expenses of $28. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Various costs | 25 | | 25 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Various costs | 150 | | 150 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also, this line item includes $76 for gasoline with no indication what vehicle was fueled. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Various costs | 165 | | 165 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also, this line item includes $90 for gasoline with no indication what vehicle was fueled. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Food | 2,013 | | 2,013 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also, this line item includes $582 for meals for laborers with no evidence from the laborers that they received the meals. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Surveying and car rental | 3,919 | | 3,919 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also, this line item includes $597 for cars rented from SERPIC employees with no indication of the type of car rented, the reasonableness of the rate, or why the rental was necessary. Clause 28th, of the Contract permits the 40% of subcontracting. |

**Appendix 2**

| Listing of Questioned Costs for Subcontract – SERPIC | | | | |
|---|---|---|---|---|
| *Expense* | *Submitted By DRC* | *Ineligible Costs* | *Unsupported Costs* | *Reasons for Questioned Costs* |
| Cellular telephone charges | 97 | | 97 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Various costs | 3 | 3 | | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. No documentation of these costs. Costs were incurred after the DRC contract was suspended. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Surveying equipment rental | 1,393 | | 1,393 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Drill purchase | 895 | | 895 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Various costs | 1 | | 1 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Clause 28th, of the Contract permits the 40% of subcontracting |
| Various costs | 100 | | 100 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Payroll and car rental | 3,919 | 597 | 3,322 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also, this line item includes $597 for cars rented from SERPIC employees with no indication of the type of car rented, the reasonableness of the rate, or why the rental was necessary. Finally, the car rental was for March 1 – March 15, 2001, when DRC's contract was suspended. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Transportation of materials and house rental | 199 | 199 | | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also, costs were incurred after DRC's contract was suspended. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Various costs | 1,102 | 68 | 1,033 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also, includes $68 for purchase of materials on March 2 and March 28, after DRC's contract was suspended. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Payroll and car rental | 2,951 | 597 | 2,354 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also, this line item includes $597 for cars rented from SERPIC employees with no indication of the type of car rented, the reasonableness of the rate, or why the rental was necessary. |

**Appendix 2**

| Listing of Questioned Costs for Subcontract – SERPIC | | | | |
|---|---|---|---|---|
| **Expense** | **Submitted By DRC** | **Ineligible Costs** | **Unsupported Costs** | **Reasons for Questioned Costs** |
| | | | | Finally, the cars rentals were rented after DRC's contract was suspended.<br>Clause 28th, of the Contract permits the 40% subcontracting.<br>Services of civil engineer included the vehicle rental. |
| Various costs | 9 | 9 | | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also, these costs were incurred after DRC's contract was suspended.<br>Clause 28th, of the Contract permits the 40% of subcontracting |
| Rental | 515 | 55 | 460 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also includes $55 in taxes.<br>Clause 28th, of the Contract permits the 40% of subcontracting. |
| Payroll and car rental | 2,951 | 597 | 2,354 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also, this line item includes $597 for cars rented from SERPIC employees with no indication of the type of car rented, the reasonableness of the rate, or why the rental was necessary. Finally, the cars rentals were rented after DRC's contract was suspended.<br>Clause 28th, of the Contract permits the 40% of subcontracting.<br>Services of the civil engineer included rental car for mobilization. |
| Tests | 153 | 153 | | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also, the costs were incurred after DRC's contract was suspended.<br>Clause 28th, of the Contracts permits the 40% of subcontracting. |
| Payroll and car rental | 2,951 | 597 | 2,354 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also, this line item includes $597 for cars rented from SERPIC employees with no indication of the type of car rented, the reasonableness of the rate, or why the rental was necessary. Finally, the cars rentals were rented after DRC's contract was suspended.<br>The project was suspended temporary not cancelled. |
| Equipment rental and purchase of materials | 1,611 | 172 | 1,439 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also, $172 in costs were incurred after DRC's contract was suspended.<br>The project was suspended temporary not cancelled. |
| Rental | 515 | 55 | 460 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also includes $55 in taxes.<br>Clause 28th, of the Contract permits the 40% of subcontracting.<br>Services of the civil engineer included rental car for mobilization. |
| Benefits | 6,195 | | 6,195 | The subcontract between DRC and |

**Appendix 2**

| *Listing of Questioned Costs for Subcontract – SERPIC* | | | | |
|---|---|---|---|---|
| ***Expense*** | ***Submitted By DRC*** | ***Ineligible Costs*** | ***Unsupported Costs*** | ***Reasons for Questioned Costs*** |
| | | | | SERPIC was not approved by FHIS and USAID. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Payroll and car rental | 1,771 | 358 | 1,413 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also, this line item includes $358 for cars rented from SERPIC employees with no indication of the type of car rented, the reasonableness of the rate, or why the rental was necessary. Finally, the cars rentals were rented after DRC's contract was suspended. Clause 28th, of the Contract permits the 40% of subcontracting. Services of the civil engineer included rental car for mobilization |
| Various costs | 305 | 152 | 153 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Costs were incurred after suspension of DRC's contract; however, $153 of these costs were related to closing down operations under the subcontract. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Profit and administrative costs | 17,005 | | 17,005 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also, there is no documentation to support these cost elements. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Travel costs | 133 | | 133 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Various costs | 105 | | 105 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Includes $40 for hotel with no receipt. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Helper | 14 | | 14 | No receipt from helper. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Various costs | 1,061 | | 1,061 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Payroll and car rental | 3,736 | 597 | 3,139 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also, this line item includes $597 for cars rented from SERPIC employees with no indication of the type of car rented, the reasonableness of the rate, or why the rental was necessary. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Purchase of PVC pipe | 1,127 | | 1,127 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Clause 28th, of the Contract permits the 40% of subcontracting |
| Purchase of desks | 591 | | 591 | The subcontract between DRC and SERPIC was not approved by FHIS |

**Appendix 2**

| Listing of Questioned Costs for Subcontract – SERPIC | | | | |
|---|---|---|---|---|
| ***Expense*** | ***Submitted By DRC*** | ***Ineligible Costs*** | ***Unsupported Costs*** | ***Reasons for Questioned Costs*** |
| | | | | and USAID. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Steel reinforcement structures | 237 | | 237 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Various costs | 249 | | 249 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Purchase of barrels | 177 | | 177 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Purchase of materials and various costs | 817 | | 817 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Radio communications | 35 | | 35 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Copies of blueprints | 162 | | 162 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Photocopier paper | 25 | | 25 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Tool purchase | 50 | | 50 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Brick purchase | 1,432 | | 1,432 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Payroll and other costs | 9,811 | | 9,811 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also, this line item includes $597 for cars rented from SERPIC employees with no indication of the type of car rented, the reasonableness of the rate, or why the rental was necessary. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Overtime | 3 | | 3 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Surveying equipment rental | 1,393 | | 1,393 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Copies of blueprints | 91 | | 91 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. |

**Appendix 2**

| Listing of Questioned Costs for Subcontract – SERPIC | | | | |
|---|---|---|---|---|
| **Expense** | **Submitted By DRC** | **Ineligible Costs** | **Unsupported Costs** | **Reasons for Questioned Costs** |
| | | | | Clause 28th, of the Contract permits the 40% of subcontracting. |
| Various costs | 29 | 29 | | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also, these costs were incurred after suspension of the contract with DRC. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Payroll and various costs | 7,148 | | 7,148 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also, this line item includes $597 for cars rented from SERPIC employees with no indication of the type of car rented, the reasonableness of the rate, or why the rental was necessary. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Cell phone | 43 | | 43 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Payroll and other costs | 5,452 | | 5,452 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Overtime | 8 | 8 | | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also, these costs were incurred after the contract with DRC was suspended. Clause 28th, of the Contract permits the 40% of subcontracting. The costs were paid after the contract not incurred. |
| Payroll an d other costs | 3,540 | | 3,540 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also, this line item includes $597 for cars rented from SERPIC employees with no indication of the type of car rented, the reasonableness of the rate, or why the rental was necessary. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Purchase of material | 1,925 | | 1,925 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Clause 28th, of the Contract permits the 40% of subcontracting. |
| Payroll and other costs | 2,818 | | 2,818 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also, this line item includes $298 for a car rented from a SERPIC employee with no indication of the type of car rented, the reasonableness of the rate, or why the rental was necessary. Clause 28th, of the Contract permits the 40% of subcontracting. Services of civil engineer included vehicle rental for mobilization. |
| Payroll and other costs | 8,467 | | 8,467 | The subcontract between DRC and SERPIC was not approved by FHIS and USAID. Also, this line item includes $179 for a car rented from a SERPIC employee with no indication of the type of car rented, |