DRC/ Honduras

# SMITH, CURRIE & HANCOCK LLP

ATTORNEYS AT LAW

A LIMITED LIABILITY PARTNERSHIP THAT INCLUDES PROFESSIONAL CORPORATIONS

*Atlanta*
2600 Harris Tower
233 Peachtree Street, N.E.
Atlanta, Georgia 30303-1530
Telephone: (404) 521-3800
Facsimile: (404) 688-0671

*Charlotte*
Suite 301
1023 West Morehead Street
Charlotte, North Carolina 28208
Telephone: (704) 334-3459
Facsimile: (704) 334-7850

*Reply to:*
KARL DIX, JR.
Atlanta, Georgia Office
Direct Dial: (404) 582-8038
kfdix@smithcurrie.com
Admitted to practice in
Georgia and New York

*Tallahassee*
1004 DeSoto Park Drive
Post Office Box 589
Tallahassee, Florida 32302-0589
Telephone: (850) 878-3700
Facsimile: (850) 656-0329

*Ft. Lauderdale*
1600 S.E. 17th Street Causeway, Suite 304
Post Office Box 460327
Ft. Lauderdale, Florida 33346-0327
Telephone: (954) 761-8700
Facsimile: (954) 524-6927

May 30, 2003

**VIA OVERNIGHT MAIL**

Edward S. Adamkewicz, Recorder
Armed Services Board of Contract Appeals
Skyline Six, Room 703
5109 Leesburg Pike
Falls Church, Virginia 22041-3208

**NOTICE OF APPEAL**

**Re: USAID Contract No. 62747**
**Reconstruction Program, Group 1a**
**Construction of Sanitary Sewer and Portable Water System**

Dear Mr. Adamkewicz:

DRC, Inc. hereby provides this its Notice of Appeal to the Contracting Officer's final decisions which are attached. Please enter my appearance as the attorney for DRC, Inc. If you should have any questions regarding this notice, please do hesitate to call me. Thank you for your assistance in this matter.

Respectfully submitted,

**SMITH, CURRIE & HANCOCK LLP**

Karl Dix, Jr.
Attorneys for DRC Caribbean, Inc.

KFD/jw
Encl.
cc: Annette E. Tuebner, Regional Contracting Officer
Mr. Robert J. Isakson
Mr. Hal Callaway

EXHIBIT
H

# US AGENCY FOR INTERNATIONAL DEVELOPMENT
USAID/Honduras

BY FACSIMILE TRANSMISSION
251/343-5554

March 11, 2003

Mr. Robert Isakson
Managing Director
DRC, Inc.
740 Museum Drive
Mobile, Alabama 36608

Subject: Final Settlement, #62747 Reconstruction Program, Group 1a, Construction of Sanitary Sewer and Potable Water System.

References:
(a) DRC Claim dated January 21, 2002
(b) Audit Report No.: 1-522-03-001-F, Issued 12/2/2002
(c) DRC Response to Draft Audit Report dated 11/21/02
(d) USAID Letter dated 2/4/2003

Dear Mr. Isakson:

On February 4, 2003, I sent you my proposed settlement of the claim (ref (d)) submitted by DRC (ref (a)). I allowed thirty days (30) for DRC to respond with any information not previously submitted to the auditors that may have had a bearing on the settlement and indicated that if no additional information was forthcoming, my final decision would be issued on March 11, 2003. As the Mission has received no response from DRC, this letter represents the final settlement of the claim.

Based on my review as explained in ref (d), the final amount authorized in settlement of the claim was a total of $257,889. This is comprised of $92,273 previously paid for materials purchased by DRC, Inc. and turned over to FHIS, and $165,616 as amount owed to be paid to settle the claim in its entirety.

Should you have any questions regarding this matter please contact James C. Athanas, Office of Contract Management, jathanas@usaid.gov at (504)236-9320; ext. 4041.

Sincerely,

Annette E. Tuebner
Regional Contracting Officer
USAID Honduras/Nicaragua

cc: Dean Walter, Controller

Mailing Addresses: From USA, USAID/Honduras, UNIT 2927, APO AA 34022, Tel. 011-504-236-9320
In Honduras: Apartado Postal 3453, Tegucigalpa, M. D. C. Tel. 236-9320, Fax (504) 236-7776

# US AGENCY FOR INTERNATIONAL DEVELOPMENT
## USAID/Honduras

BY FACSIMILE TRANSMISSION

Mr. Robert Isakson
Managing Director
DRC, Inc.
740 Museum Drive
Mobile, Alabama 36608

February 4, 2003

Subject: Termination Settlement Proposal: #62747
Reconstruction Program, Group 1a, Construction of a Sanitary Sewer and Potable Water System.

Reference: (a) DRC Claim dated January 21, 2002
(b) Audit Report No.: 1-522-03-001-F, Issued 12/2/2002
(c) DRC Response to Draft Audit Report dated 11/21/02

Dear Mr.Isakson:

I have reviewed the claim submitted by DRC (ref (a)), together with the referenced audit report (ref (b)), and DRC's response to the draft audit report (ref (c)). The following represents the findings of my review, based on a complete and thorough analysis of the referenced documents. I am allowing 30 days for any additional information that DRC, Inc. believes to be relevant and supporting of its claim that has not been previously submitted.

**<u>Direct Materials and Labor - ($57,320.52)</u>**

**<u>Claimed - $211,168. Materials previously paid Dec. 2002, $92,273.48; Disallowed - $61,574. Sustained - $61,574;</u>**

The denial of the $61,574 is primarily based on costs incurred after the suspension of the contract which were not necessary to maintain a standby capability. Of the $61,574 denied, $56,594 represented costs associated with bid bonds that, according to records reviewed, were never paid.

Mailing Addresses: From USA: USAID/Honduras, UNIT 2927, APO AA 34022. Tel. 011-504-236-9320
In Honduras: Apartado Postal 3453, Tegucigalpa, M. D. C. Tel. 236-9320. Fax (504) 236-7776

**Honduras Overhead - ($55,052)**
**Claimed - $904,218; Disallowed - $904,218; Sustained - $849,167;**

DRC claimed a total allocable overhead to the Honduras Office of $2,753,470 of which $2,133,423 was determined to be ineligible based on costs incurred after the suspension of the contract which were not necessary to maintain a standby capability and $21,658 which was determined to be unsupported. This leaves $598,389 split over the Group 1 and Group 1a contracts. DRC used a rate of 32.2% calculated by adding the Group 1 contract value of $17,667,967, to the Group 1a contract value of $8,373,931 for a total of $26,041,898. The Group 1a value of $8,373,931 was divided by the total of the two contracts $26,041,898, arriving at a rate of 32.2%. Using this rate on the allocable overhead for the Group 1a contract resulted in a final figure for the Honduras office overhead of $192,681.

However, calculating the rate in this manner does not give an accurate representation of the amount that each contract benefited from the indirect costs. The Group 1a contract was terminated two months after it began. A more accurate method to allocate indirect costs is the following:

Total estimated cost under Group 1a ($8,373,931) multiplied by 2/13 (the contract was for 13 months) Resulting in a per month estimate of ($1,288,297). This figure is added to the actual billings for Group 1 of $12,697,520 for a total of $13,985,816. Dividing the per month estimate by $13,985,816 results in a rate of 9.2% ($1,288,297 / $13,985,816 = 9.2%). When applied to the allocable overhead of $598,389 the result is $55,052 for allocable overhead for the Group 1a contract.

**Bidding Expense - ($833)**

**Claimed - $32,389. Disallowed - $32,389; Sustained - $31,556.**

Of the claimed expenses, the audit report indicated ineligible costs of $1,786 (duplicate charge, also charged under direct materials line item), and unsupported costs of $30,603. The primary reason these costs were disallowed was lack of supporting information and the fact that the estimates were completed more than a year after the bid was submitted. Notwithstanding the lack of supporting documentation to indicate that DRC submitted a bid, an $8 million contract was awarded which indicates DRC did submit a bid. As a bid was submitted (evidenced above) it can be concluded that DRC did incur certain costs attributable to that submission. Bid & Proposal costs are generally a G&A item, meaning the cost of doing business is spread over all company contracts, not just one contract. Using the average monthly billing rate shown above of $1,288,297 and dividing that by total company billings of $47,321,373 results in a rate of 2.7% which resulted in a B&P cost of $833.

**Subcontracts - ($0.00)**

| | | |
|---|---|---|
| Subcontract Cordica - | $189,952 | - disallowed |
| Subcontract Serpic - | $136,704 | - disallowed |
| Subcontract GAP Assoc. - | 32,111 | - disallowed |

The reason for the disallowance of the entire amount claimed by DRC for subcontracts is that there is no supporting documentation, i.e., no subcontracts; no list of materials; no request for proposals; no statement of work, etc. Without some form of evidence to the contrary, there is no indication that a contractual relationship existed between DRC and any subcontractors.

**DRC Unabsorbed Home Office Overhead - ($18,772)**

The home office overhead was determined by using the Eichleay method.

Under this method, the total contract billings (not the total amount of the contract) are divided by the total company billings and multiplied by the total home office overhead. With the exception of the total contract

billings, the figures provided by DRC were applied to the Eichleay method to determine unabsorbed overhead. Actual days of contract performance are factored at 299 days. Actual number of days of delay are factored at 237. The total contract billings were determined to be $149,594 after disallowance of ineligible and unsupported costs. The final figure for the Home Office overhead attributable to the Group 1a contract is $10,472.

2. To determine the daily allocable home office overhead rate, the home office overhead costs allocable to the contract are divided by the number of days of contract performance including suspension or delay days. The resultant figure is $35.02.

3. To determine the additional home office overhead to be charged to the contract the daily allocable home office overhead rate is multiplied by the compensable suspension or delay days. This figure is $8,300.

Below are the calculations:

1. ($149,594/$47,321,373)x$3,312,646 = $10,472

2. ($10,472/299 days) = $35.02

3. $35.02 x 237 days = $8,300

Therefore, $10,472 + $8,300 = $18,772 in Home Office Overhead attributable to the contract.

<u>**Profit - $33,638**</u>

For purposes of this decision, factors considered in determining profit included extent of risk assumed, together with an analysis of the rate of profit contemplated at the time of contract award. This contract was awarded January 4, 2001, suspended February 28, 2001, and terminated on October 23, 2001. Based on this, the amount of $33,638, representing 15% of the accepted claim amount, is considered reasonable.

**Summary of Findings Expressed in Dollars:**

| | Submitted by DRC | Accepted by CO |
|---|---|---|
| Direct Material and Labor | $211,168 | $149,594 |
| Honduras Overhead | 904,218 | 55,052 |
| Bidding Expenses | 32,389 | 833 |
| Subcontract Cordica | 189,952 | 0 |
| Subcontract Serpic | 136,704 | 0 |
| Subcontract GAP Assoc | 32,111 | 0 |
| Subtotal | $1,506,542 | $205,479 |
| DRC Home Office Overhead | 106,964 | 18,772 |
| Subtotal | $1,613,506 | $224,251 |
| Profit | 242,025 | 33,638 |
| Total Amount | $1,855,531 | $257,889 |
| Less materials previously paid | | -92,273 |
| Total to be Paid Under Claim | | $165,616 |

This represents the decision of the Contracting Officer based on a review of all documentation and on the findings of the audit report. DRC shall have thirty days (30) to provide any additional information not previously submitted which may have an impact on my decision.

Should no additional information be forthcoming, I will issue my final decision on March 11, 2003.

Should you have any questions regarding this matter please contact James C. Athanas, Office of Contract Management, at (504)236-9320; ext. 4041.

Sincerely,

[signature]

Annette E. Tuebner
Regional Contracting Officer
USAID Honduras/Nicaragua

ARMED SERVICES BOARD OF CONTRACT APPEALS
SKYLINE 6
5109 LEESBURG PIKE
FALLS CHURCH VA 22041-3208
Telephone: (703) 681-8502

17 June 2004

CERTIFIED MAIL
RECEIPT REQUESTED

Karl Dix, Jr., Esq.
Stephen I. Lingenfelter, Esq.
Smith, Currie & Hancock LLP
2600 Harris Tower
233 Peachtree Street, N.E.
Atlanta, GA 30303-1530

Warren D. Leishman, Esq.
John B. Alumbaugh, Esq.
Office of the General Counsel
U.S. Agency for International Development
GC/LE, Room 6.06-71
1300 Pennsylvania Avenue, NW
Washington, DC 20523-6601

Re: ASBCA No. 54206
Appeal of DRC, Inc.
Under Contract No. 62747

Dear Counsel:

Enclosed is one authenticated copy of the Board's decision.

Very truly yours,

DAVID V. HOUPE
Acting Recorder

Enclosure

EXHIBIT 6

ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of -- | ) | |
| | ) | |
| DRC, Inc. | ) | ASBCA No. 54206 |
| | ) | |
| Under Contract No. 62747 | ) | |

APPEARANCES FOR THE APPELLANT: Karl Dix, Jr., Esq.
Stephen I. Lingenfelter, Esq.
Smith, Currie & Hancock LLP
Atlanta, GA

APPEARANCES FOR THE GOVERNMENT: Warren D. Leishman, Esq.
John B. Alumbaugh, Esq.
Attorney-Advisors
U.S. Agency for International Development
Washington, DC

OPINION BY ADMINISTRATIVE JUDGE DELMAN
ON MOTION TO DISMISS FOR LACK OF JURISDICTION

The U.S. Agency for International Development (USAID or government) moves to dismiss this appeal for lack of jurisdiction. Appellant, DRC, Inc. (DRC) opposes the motion. For reasons stated below, we believe that we do not have jurisdiction over the dispute arising from this contract, and we dismiss the appeal.

STATEMENT OF FACTS FOR PURPOSES OF MOTION

1. On 29 December 2000, "Fondo Hondureno de Inversion Social" (FHIS), a ministry of the Honduran government, entered into the above-captioned contract with DRC for the construction of a water and sewer treatment facility for the nation of Honduras under reconstruction program Group I-A. The performance period was 11 months. (R4, tabs 1E, 1S)

2. Insofar as pertinent the contract provided as follows (R4, tab 1E):

> **TWENTY-FIVE: LEGAL EFFECTS OF USAID APPROVAL.** This contract shall be financed with USAID funds and USAID reserves the right to approve the terms of

> this contract, the CONTRACTOR, and any and all plans, reports, specifications, subcontracts, bidding documents, designs or other documents associated with this contract. The parties further understand and agree that USAID, in reserving any or all of the foregoing approval rights, is acting solely as a financing entity to assure the proper use of funds provided by the U.S. Government and that any decision by USAID to exercise or refrain from exercising these approval rights shall be in its capacity as the financing entity in the course of financing this project and should not be construed as making USAID a party to this contract.

Attachment A to the contract, Mandatory Clauses, Construction Services Contracts, paragraph 2, "LEGAL EFFECT OF USAID APPROVALS AND DECISIONS" also contained provisions which, in all material respects, were identical to the above. This Attachment also contained provisions for dispute resolution, paragraph 9, "SETTLEMENT OF DISPUTES." In brief, this provision provided for resolution of disputes by the Engineer identified in the contract and/or by arbitration. The parties did not select this Board to adjudicate their contract disputes. (R4, tab 2E at 0041, 0042, 0056)

3. FHIS issued a notice to proceed on 4 January 2001. By letter dated 23 February 2001, USAID informed FHIS that it was suspending the financing of the contract (R4, tab 11).

4. By letter dated 26 February 2001, FHIS gave DRC notice that the contract was suspended due to USAID's withdrawal of funding. By letter dated 1 March 2001, FHIS directed DRC to incur no further expenses or commitments in performance of the contract. (R4, tab 13E)

5. FHIS sought guidance from USAID regarding the termination of the contract. USAID proposed that the contract be terminated by mutual agreement, at which time USAID would request an assignment from FHIS of its rights and liabilities, and would thereafter negotiate a settlement of the terminated contract directly with DRC. (R4, tabs 17, 18)

6. On 21 August 2001, DRC wrote USAID and stated that it would be agreeable to a termination by mutual consent but "that such termination be effective only upon the simultaneous execution of a negotiated agreement between USAID and DRC, under which USAID agrees to negotiate and provide the termination settlement with DRC, as if the Group I-A Contract had been terminated for the convenience of the Government,

under the standard Termination for Convenience clause for construction contracts in the U.S. Federal Acquisition Regulations." DRC sought to make USAID a party in a tripartite agreement amongst FHIS, USAID and DRC. (R4, tab 21)

7. USAID responded to DRC on 27 August 2001. The government stated that "USAID will not be a party to an agreement to terminate Contract IA since Contract IA is a host country contract to which USAID is not a party." Rather, USAID proposed that in the event the contract was terminated by mutual agreement, it would be willing to accept an assignment from FHIS to negotiate directly with DRC a settlement of costs associated with DRC's mobilization. The letter further stated: "USAID will not enter into a tripartite agreement with DRC, Inc. and FHIS. The Termination for Convenience clause for construction contracts under the U.S. Federal Acquisition Regulations has no application to a USAID-fund[ed] host country contract. That clause is accordingly irrelevant to these proceedings." (R4, tab 22)

8. By mutual consent, DRC and FHIS terminated the contract on 23 October 2001 (compl., ex. A, tab 1 at 32-34).

9. Following the termination, FHIS assigned and subrogated its rights and obligations arising from the agreement for termination of the contract to the USAID (R4, tab 27E). DRC was not a signatory to this assignment.

10. DRC submitted a termination proposal to the USAID in the amount of $1,855,553, dated 21 January 2002 (R4, tab 40 at 0000, 0069). The government audited the proposal, using the FAR as a general guide to determine the reasonableness and allocability of the costs claimed. Most of DRC's costs were questioned (compl., ex. F at 4).

11. DRC and the government entered into negotiations. Title to inventory did not transfer to USAID; it ultimately became the property of FHIS (app. opp'n, ex. A at 5; USAID letter dated 13 August 2002). The negotiations failed to result in an agreement, and by letter to DRC dated 11 March 2003, the government determined the final settlement of the claim, in the amount of $257,889 (R4, tab 37). From this letter, DRC filed the subject appeal to this Board.

## DECISION

Insofar as pertinent, under the Contract Disputes Act (CDA), 41 U.S.C. § 602(a), our jurisdiction is limited as follows:

§ 602. Applicability of law

(a) Executive agency contracts. Unless otherwise specifically provided herein, this Act applies to any express or implied contract . . . entered into by an executive agency for--

(1) the procurement of property, other than real property in being;

(2) the procurement of services;

(3) the procurement of construction, alteration, repair or maintenance of real property; or,

(4) the disposal of personal property.

Clearly, the record shows that the USAID did not enter into an express or implied contract with DRC for the procurement of personal property, services, construction, maintenance of real property or disposal of personal property. The underlying construction contract was solely between FHIS and DRC; USAID was merely the financier. After this contract was terminated with the consent of the parties, USAID agreed with FHIS to settle the terminated contract. DRC was not a signatory to this assignment. USAID did not intend to procure, nor did it in fact procure any goods or services for the executive agency in carrying out its duties under this assignment. The legal relationship between USAID and DRC was not at any time like that of a buyer and seller so as to fall under the above-referenced provisions of the CDA. *G.E. Boggs & Associates, Inc. v. Roskens,* 969 F.2d 1023 (Fed. Cir. 1992).

We have considered appellant's arguments and cited cases but they are distinguishable. They do not persuade us that we have jurisdiction over this dispute under the CDA. That the government audited appellant's claim using the FAR as a general guide can have no effect on our jurisdiction, which is statutory. Appellant also has not shown that the parties under the subject construction contract agreed to take their disputes to this Board under the SETTLEMENT OF DISPUTES provision of their contract (finding 2), under which jurisdiction may lie under certain circumstances pursuant to the agreement of the parties. *E.g., G.E. Boggs & Associates, Inc.*, ASBCA Nos. 34841 *et al.*, 91-1 BCA ¶ 23,515 at 117,906.

The appeal is dismissed for lack of jurisdiction.[1]

Dated: 16 June 2004

JACK DELMAN
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

EUNICE W. THOMAS
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 54206, Appeal of DRC, Inc., rendered in conformance with the Board's Charter.

Dated: JUN 17 2004

for DAVID V. HOUPE
Acting Recorder, Armed Services
Board of Contract Appeals

---

[1] After the government's motion to dismiss was filed, appellant sought discovery in support of its claim, which the government moved to stay pending disposition of its motion to dismiss. The government's motion is now moot. We believe that the contractual relationships amongst the participants here are sufficiently clear on this record to permit us to conclude that we lack jurisdiction. Appellant has not persuaded us that discovery would cause us to reach a different conclusion.