# PRESIDENCIA DE LA REPUBLICA
## *FONDO HONDUREÑO DE INVERSIÓN SOCIAL*

Comayagüela, M.D.C.,
22 de Octubre del 2001

**OFICIO No. DSM-116-2001**

Señor
**TIMOTHY M. MAHONEY**
Director de la Misión
Agencia Internacional para el Desarrollo de
Honduras (USAID/HONDURAS)
Su Oficina

REF: Programa de la USAID No. 522-0410
Programa de Reconstrucción por el Huracán HRP).
Obras del Grupo I-A. **Convenio de Terminación por Mutuo Acuerdo.**

Estimado Señor Director:

Atendiendo la solicitud de USAID, formulada mediante Carta de Ejecución No. 92 de fecha 19 de Octubre del 2001, contraída a solicitar que **"El FHIS, ceda a la USAID los derechos y obligaciones para negociar la liquidación del contrato directamente con DRC."**, el Fondo Hondureño de Inversión Social (FHIS), previa notificación a la Secretaria de Finanzas, y en observancia a lo dispuesto en el Convenio de Donación de Objetivo Especial, Adjunto D, Anexo II, Articulo E, Sección E.4, por este medio **TRANSFIERE Y SUBROGA LOS DERECHOS Y OBLIGACIONES DERIVADOS DEL CONVENIO PARA LA TERMINACION DE CONTRATO POR MUTUO ACUERDO, SUSCRITO Y EJECUTADO POR Y ENTRE EL FHIS Y DRC,INC., A FAVOR DE USAID.**

Una vez firmado oficialmente el presente oficio, surtirá los efectos legales correspondientes, quedando formalizada así la subrogación de derechos y obligaciones a favor de la USAID.

Atentamente,

**MOISES STARKMAN PINEL**
**MINISTRO**

**Firma manifestándose de acuerdo:**

**TIMOTHY MAHONEY**
**DIRECTOR DE LA MISION**
**USAID/HONDURAS**

| | | |
|---|---|---|
| Cc: | Ing. William Handal Raudales | - Presidente del Consejo de Administración |
| | Lic. Gabriela Núñez de Reyes | - Ministra de Finanzas |
| | Lic. Jorge Alberto Delgado | - Auditor interno Concurrente DIM/FHIS |
| | Ing. Gunther Wiese, | - Director Interino de la DIM-FHIS |
| | Lic. Hostilio López, | - Director Legal del FHIS |
| | Sr Rachel Dickson | - Blackmon Insurance Agency |
| | Archivo | |



(36)

**PRESIDENCY OF THE REPUBLIC**
**HONDURAN FUND FOR SOCIAL INVESTMENT**

**AGREEMENT FOR TERMINATION OF CONTRACT BY MUTUAL CONSENT CONTRACT FOR CONSTRUCTION OF WORKS FROM GROUP IA**

We, MOISES STARKMAN PINEL, acting as Minister of the Honduran Fund for Social Investment (FHIS), according to Agreement No. 017-2000 dated 27 of January 2000, hereinafter called FHIS and MURRAY PAUL FARMER, Administrative Director, acting in representation of DCR, Inc., faculty granted by power of attorney of Mr. ROBERT J. ISAKSON, General Director of DRC, Inc., whose signature knowledge has been authenticated by Notary Public Saul Montes Amaya, with Bar Association Carnet No. 2977, hereinafter called THE CONTRACTOR, have convened on terminating by "MUTUAL CONSENT", the contract of "CONSTRUCTION OF POTABLE WATER AND SANITARY SEWAGE WORKS FROM GROUP IA OF THE RECONSTRUDTION PROGRAM" NO. 62747. Termination Agreement subject to the following conditions:

__**FIRST:**__ Both parties accept that the contract for Construction of Potable Water and Sanitary Sewage Works from Group IA of the Reconstruction Program herein terminates, as a consequence of the facts related below:

1) FHIS called bids for the Construction of Potable Water and Sanitary Sewage Works from Group IA of the Reconstruction Program, through Bid No. PDM-009-2000, calling constructing Companies from the United States of America and Honduran Firms, having started the pre-classification process of the participant companies on the 27th of December 2000, through the Evaluation Commission appointed to that effect under resolution No. FHIS-3-086-2000, with the special assessment of the Concurrent Audit DIM/FHIS, and the Group of Engineers of the United States Army and USAID, the company DRC, Inc pre-classified, passing to the second stage of the process, thus the Evaluation of the Economic Offer, wining DRC,Inc. for having presented he lowest bid.
2) That having finished with the awarding process in all its stages and in attention to the approval of USAID, notified by means of a Letter of Execution No. 40 of the 27th of December 2000, proceeded on the 29th of December 2000 to subscribe the Contract for Construction of Potable Water and Sanitary Sewage Works from Group IA between FHIS and DRC, Inc., with the previous authorization by USAID through Letter of Execution No. 43 of the same date.

On the left bottom side of the page there are three seals and signatures that read: illegible. O the right bottom corner of the page there are two seals with signatures that read: illegible.

**PRESIDENCY OF THE REPUBLIC**
**HONDURAN FUND FOR SOCIAL INVESTMENT**



3) That through Letter of Execution No. 45 of the 23rd of February 2001, USAID notified FHIS the temporary suspension of financing until farther written notification, this was necessary due to questions that had to be answered to the satisfaction of USAID, the immediate effect of the fund suspension was that USAID would not approve the financing for the Contract of Group I-A until farther notification.
4) That with the Letter of Execution No.51 the 29th of May 2001, USAID notified FHIS the need of suspending the above-referred contracts.
5) That with Letter of Execution No. 56 of the 7th of May 2001, USAID notified the definite Suspension, since as to that moment the bidder had not answered the questions to the satisfaction of USAID, informing us that the revision of such matters continued.
6) That through Letter of Execution No. 63 of the 18th of June 2001, USAID proposed that FHIS agreed to terminate the Contract of Group I-A by mutual consent, each party reserving acquired rights under Contract I-A related with (i) reimbursement of eligible costs under Contract I-A (ii) disposition of any equipment and materials, and (iii) presentation of errors and omissions in the pre-classification documents.
7) That in Letter of Execution No. 65 of the 26th of June 2001, clarifying the Spanish version through Letter of Execution No. 70 of the 25th of July 2001, USAID, based on attachment D, Annex II, Article E, Section E-4 of the Agreement subscribed between the Republic of Honduras and the United States of America, USAID states that it will ask FHIS the assignation of rights and obligations to negotiate the liquidation of the contract directly with DRC, Inc.

<u>**SECOND:**</u> that being the case, in this act FHIS and the CONTRACTOR (DRC, Inc.) agree to terminate the Contract "Construction of Potable Water and Sanitary Sewage Works of Group IA of the Reconstruction Program", each party reserving the acquired rights under the Contract related with: (i) the reimbursement of eligible costs under the Contract, (ii) disposition of any equipment and material, and (iii) presentation of errors and omissions in the pre-classification documents". The previous, under the understanding that the acquired rights by DRC will be exercised, at due time, directly against USAID when DRC subrogates rights and obligations derived from this contract.

On the left bottom side of the page there are three seals and signatures that read: illegible. O the right bottom corner of the page there are two seals with signatures that read: illegible.

**PRESIDENCY OF THE REPUBLIC**
**HONDURAN FUND FOR SOCIAL INVESTMENT**

Contract Termination Agreement
By Mutual Consent
Page. No. 3

**<u>THIRD:</u>** both parties express their consent that FHIS, by request of USAID, according to the provisions of the Attachment D, Annex II, Article E, Section E.4, of the agreement subscribed between the Republic of Honduras and the United States of America, accept and confer rights and obligations derived by the mentioned Contract to USAID to negotiate the liquidation of the contract directly with DRC, Inc.

It is understood that as soon as USAID subrogates rights and obligations derived from the Contract that terminates by mutual consent, FHIS will be liberated from any claim derived from the contract; DRC, Inc. commits not to initiate any action by this concept against FHIS, before authorities and Tribunals of the Republic of Honduras as well as the United States of North America.

In witness whereof, we sign the present Contract Termination Agreement, in two original documents, in the presence of representatives of the Army Engineer Group of the United States of North America and USAID, in the City of Comayaguela, Municipality of the Central District, on the twenty-third day of October year two thousand and one.

For the Honduran Fund for Social Investment (FHIS)

Moises Starkman Pinel
Minister

For the Company
DRC, INC.

Murray Paul Farmer
Administrative Director

Over the name Moises Starkman Pinel there is a signature and seal that read: illegible.
Under this name there are two seals and signatures that read: illegible
Over the name Murray Paul Farmer there is a signature that reads: illegible.
Under this name there are three seals and signatures that read: illegible.

**PRESIDENCY OF THE REPUBLIC**
**HONDURAN FUND FOR SOCIAL INVESTMENT**

Comayaguela, M.D.C. Official Document No. DSM-116-2001
October 22, 2001

REF: USAID Program No. 522-0410
Hurricane Reconstruction Program HRP.
Works-Group 1-A. Termination Agreement by Mutual Consent

Mr.
TIMOTHY M. MAHONEY
Director of the Mission
International Agency for Development of Honduras
(USAID/HONDURAS)
His Office

Complying with USAID´S request, submitted by Letter of Execution No. 92, dated the 19th of October 2001, requesting that **"FHIS transfers to USAID the rights and obligations to negotiate the liquidation of contract directly with DRC."**, THE Honduran Fund for Social Investment (FHIS), with previous notification to the Finance Secretariat and according to the provisions in the Special Objective Grant Agreement, Attachment II, Article E, Section E.4, by this mean **TRANSFERS AND SUBROGATES RIGHS AND OBLIGATIONS DERIVED FROM THE AGREEMENT FOR CONTRACT TERMINATION BY MUTUAL CONSENT, SUBSCRIBED AND EXECUTED BY AND BETWEEN FHIS AND DRC,INC., IN FAVOR OF USAID.**

Once the present Official Document is signed officially, the corresponding legal results will take affect, it hereby formalizes the subrogation of rights and obligations in favor of USAID.

Respectfully,

MOISES STARKMAN PINEL
MINISTER

Signs manifesting agreement

TIMOTHY MAHONY
Director of the Mission
USAID/HONDURA

| | |
|---|---|
| Wc: Eng. William Handal Raudales | Chairman of the Administration Council |
| Lic. Gabriela Nuñez de Reyes | Minister of Finance |
| Lic. Jorge Alberto Delgado Internal | Concurrent Auditor |
| Eng. Gunther Wiese | DIM-FHIS In.emal Director |
| Lic. Otilio López | FHIS Legal Director |
| Mr. Rechel Dickson | Blackmon Insurance Agency |
| File | |

Over the name Moises Starkman Pinel there is a signature and seal that read: illegible.
On the bottom left side of the page there is a seal that reads: Sub Direction FHIS, the rest is illegible.
Beside this seal there is another tat reads: Contracting Direction, the rest is illegible.
Over this seal there is a signature that reads: illegible.
O the right, bottom corner of the page there are three seals with signatures that read: illegible.

**PRESIDENCIA DE LA REPUBLICA**
***FONDO HONDUREÑO DE INVERSIÓN SOCIAL***

Convenio de Terminación de Contrato
por Mútuo Acuerdo
Pág. No.3

**TERCERO:** Ambas partes manifiestan su acuerdo a que **EL FHIS**, a solicitud de la USAID, tal y como lo prevé el ADJUNTO D, ANEXO II, ARTICULO E, Sección E.4. del Convenio suscrito entre la República de Honduras y los Estados Unidos de América, acepte asignarle los derechos y obligaciones derivados del Contrato relacionado, a USAID, para que sea ésta quien negocie la liquidación del mismo directamente con DRC,Inc.

Es entendido que una vez que USAID se subrogue en los derechos y obligaciones derivados del Contrato que se termina por mutuo acuerdo, el FHIS quedará liberado de cualquier reclamo derivado de la suscripción del mismo; comprometiéndose DRC,Inc. a no iniciar ninguna acción por este concepto contra el FHIS, tanto ante autoridades y Tribunales de la República de Honduras como ante las de los Estados Unidos de Norteamérica.

En fe de lo cual, firmamos el presente Convenio de Terminación de Contrato, en dos documentos originales, en presencia de representantes del Cuerpo de Ingenieros del Ejército de los Estados Unidos de Norte América y de la USAID, en la Ciudad de Comayagüela, Municipio del Distrito Central, a los veintitrés días del mes de octubre del año dos mil uno.

POR EL FONDO HONDUREÑO
DE INVERSIÓN SOCIAL (FHIS);

**MOISES STARKMAN PINEL**
**MINISTRO**

POR LA EMPRESA
DRC.INC.

**MURRAY PAUL FARMER**
**DIRECTOR ADMINISTRATIVO**

FONDO HONDUREÑO DE INVERSIÓN SOCIAL - DIRECCION DE CONTRATACIONES - FHIS

FONDO HONDUREÑO DE INVERSIÓN SOCIAL - DIRECTOR LEGAL - FHIS

FONDO HONDUREÑO DE INVERSIÓN SOCIAL - SUB-DIRECCION DE CONTRATACIONES - FHIS

UNIDAD PREINTERVENCION - JEFATURA - FHIS

DIRECCION DE INFRAESTRUCTURA - DIRECTOR

## PRESIDENCIA DE LA REPUBLICA
### *FONDO HONDUREÑO DE INVERSIÓN SOCIAL*



3) Que mediante Carta de Ejecución No. 45 del 23 de febrero del 2001, USAID notificó al FHIS la Suspensión Temporal del financiamiento hasta nueva notificación por escrito, que la misma fue necesaria debido a las interrogantes que se habían suscitado y que debían aclararse a satisfacción de la USAID y que el efecto inmediato de la suspensión de fondos era que la USAID hasta nueva notificación por escrito, no aprobaría financiamiento para el Contrato del Grupo I-A.

4) Que con la Carta de Ejecución No. 51 del 29 de mayo del 2001, USAID notificó al FHIS la necesidad de suspender las contrataciones en referencia.

5) Que con Carta de Ejecución No. 56 del 7 de mayo del 2001, USAID notifica la Suspensión Definitiva, en vista de que hasta ese momento las interrogantes no habían sido respondidas a satisfacción de la USAID por los licitantes, informándonos que la revisión de dichos asuntos continuaba.

Que mediante Carta de Ejecución No. 63 del 18 de junio del 2001, USAID propone que el FHIS acuerde la terminación del Contrato del Grupo I-A por mutuo acuerdo, reservando cada una de las partes los derechos adquiridos bajo el Contrato I-A relacionados con (i) el reembolso de costos elegibles bajo el Contrato I-A, (ii) disposición de cualquier equipo o materiales, y (iii) presentación de errores y omisiones en los documentos de precalificación".

7) Que en Carta de Ejecución No. 65 de 26 de junio del 2001, aclarando la versión en español mediante Carta de Ejecución No. 70 del 25 de julio del 2001, USAID, en base a lo previsto en el ADJUNTO D, ANEXO II, ARTICULO E, SECCION E.4 del Convenio suscrito entre la República de Honduras y los Estados Unidos de América, USAID manifiesta que solicitará al FHIS una asignación de los derechos y obligaciones para negociar la liquidación del contrato directamente con DRC,Inc.

**SEGUNDO:** Que siendo así lo convenido, en este acto **EL FHIS** y **EL CONTRATISTA** (DRC.,Inc.) acuerdan dar por terminado el Contrato **"CONSTRUCCION DE OBRAS DE AGUA POTABLE Y ALCANTARILLADO SANITARIO DEL GRUPO IA DEL PROGRAMA DE RECONSTRUCCION"** reservando cada una de las partes los derechos adquiridos bajo el Contrato relacionados con (i) el reembolso de costos elegibles bajo el Contrato, (ii) disposición de cualquier equipo o materiales, (iii) presentación de errores y omisiones en los documentos de precalificación". Lo anterior, en el entendido que los derechos adquiridos por DRC serán ejercidos, en su caso, directamente contra USAID una vez que la misma se haya subrogado en los derechos y obligaciones derivados de este contrato.

# PRESIDENCIA DE LA REPUBLICA
## *FONDO HONDUREÑO DE INVERSIÓN SOCIAL*

### CONVENIO PARA LA TERMINACION DE CONTRATO POR MUTUO ACUERDO
### CONTRATO DE CONSTRUCCION DE OBRAS DEL GRUPO IA

Nosotros, **MOISES STARKMAN PINEL,** actuando en su condición de Ministro de Fondo Hondureño de Inversión Social (FHIS), según Acuerdo No. 017-2000 de fecha 27 de enero del 2000, quien en lo sucesivo se denominará **EL FHIS** y por otra, **MURRAY PAUL FARMER**, Director Administrativo, actuando en representación de la empresa DRC,Inc., facultad otorgada mediante Carta Poder del señor ROBERT J. ISAKSON, Director General de la empresa DRC.Inc., cuyo conocimiento de firma ha sido autenticado por el Notario Saúl Montes Amaya, con Carnet de Colegiación No. 2977, y que en lo sucesivo se denominará **EL CONTRATISTA,** hemos convenido en dar por terminado por **"MUTUO ACUERDO"**, el Contrato de **"CONSTRUCCION DE OBRAS DE AGUA POTABLE Y ALCANTARILLADO SANITARIO DEL GRUPO IA DEL PROGRAMA DE RECONSTRUCCION" No. 62747** Convenio de Terminación sujeto a las siguientes condiciones:

**PRIMERO:** Ambas partes aceptan que el Contrato de Construcción de Obras de Agua Potable y Alcantarillado Sanitario del Grupo IA del Programa de Reconstrucción se termina con este acto, como consecuencia de los hechos que pasamos a relacionar:

1) Que el FHIS licitó la Construcción de Obras de Agua Potable y Alcantarillado Sanitario del Grupo I-A del Programa de Reconstrucción, mediante Licitación PDM-009-2000, invitando a las Empresas Constructoras de los Estados Unidos de América y a Firmas Hondureñas, habiéndose iniciado el día 27 de diciembre del 2000 el proceso de precalificación de las empresa participantes, a través de la Comisión de Evaluación nombrada al efecto con Resolución No. FHIS-3-086-2000, contando con la asesoría especial de Auditoría Concurrente DIM/FHIS, del Cuerpo de Ingenieros del Ejercito de los Estados Unidos y de la USAID, habiendo precalificado entre otras, la empresa DRC.Inc., pasando a la segunda etapa del proceso, es decir a la Evaluación de Ofertas Económicas, ganando DRC.Inc. por haber presentado la oferta más baja.

2) Que habiéndose evacuado el procedimiento de adjudicación en todas sus etapas y en atención a la aprobación de la USAID, notificada mediante Carta de Ejecución No. 40 de fecha 27 de diciembre del 2000, se procedió el día 29 de diciembre del 2000 a suscribir el Contrato de Construcción del Grupo I-A entre el FHIS y DRC.Inc., previa autorización por parte de USAID mediante Carta de Ejecución No. 43 de esa misma fecha.

# CONTRACT 1A- PROJECT OVERVIEW

On the 9th of June 1999, Hurricane Mitch made landfall on the Country of Honduras. As a result of the rainfall and winds of this hurricane, Honduras experienced extensive loss of life and damage to the country's infrastructure. Through a grant issued by the United States Agency for International Development (USAID), the Honduran Fund for Social Investment (FHIS) issued DRC, Inc. (DRC) two contract awards relating to the reconstruction efforts after the disaster. One of the contracts awarded to DRC was titled #62747 RECONSTRUCTION PROGRAM, GROUP 1A CONSTRUCTION OF A SANITARY SEWER AND POTABLE WATER SYSTEM.(Contract 1A) in the amount of $8,373,930 (U.S.)[1]

Contract 1A was awarded on the 29th of December 2000, had its Notice To Proceed issued on the 4th of January 2001, and had a performance period of eleven months (332 Days). The contract work consisted of various infrastructure improvements including the installation of a potable water and sanitary sewer system in different locations throughout Honduras. Through the months of January and February 2001, DRC proceeded to mobilize and begin to perform the construction efforts associated with the work under its contract.

---

[1] See enclosed copy of original contract agreement between FHIS and DRC in the Documents Section of this package.

## CONTRACT SUSPENSION, TERMINATION, & ASSIGNMENT

On the 1st of March 2001, DRC was given an official Suspension of Work notice by FHIS[2]. This suspension of work was issued as the USAID temporarily suspended its funding to FHIS for the contract. In accordance with Article E of its contract titled **Cancellation Resources**, Section E.1. **Suspension and Cancellation**, DRC discontinued implementation of its contract work requirements and remained on standby.

On the 18th of June 2001, the USAID requested that FHIS terminate Contract 1A with DRC through a mutual consent agreement with DRC[3]. Through additional correspondence dated 26 June 2001 and 25 July 2001, the USAID requested that FHIS assign its contract rights and obligations to USAID, allowing USAID to negotiate all final contract termination costs directly with DRC.[4] DRC continued on standby with the contract under suspension. On 22 October 2001, FHIS and USAID entered into an agreement whereby *"FHIS transfers to the USAID the rights and obligations to negotiate the liquidation of contract directly with DRC."*[5]

On 23 October 2001, DRC's 236-day period of suspension ended when the FHIS Contract 1A agreement with DRC was terminated. Through a mutual

[2] See enclosed FHIS notice of Suspension in the Documents Section of this package.
[3] See USAID Correspondence #63 written to FHIS.
[4] See USAID Correspondence #65 and #70 written to FHIS.
[5] See enclosed FHIS/USAID agreement dated 22 October 2001 in the Documents Section of this package.

consent termination agreement between FHIS and DRC, Contract 1A was terminated, with the express condition that the contract rights and obligations of FHIS were assigned to USAID for the purposes of negotiating a settlement of DRC's termination costs[6].

---

[6] See Section 3 of the Termination by Mutual Consent agreement dated 23 October 2001 Referencing Attachment D. Annex II, Article E. Section E.4 whereby the FHIS assigned its rights and obligations to USAID so that the USAID may directly negotiate the settlement of all the termination costs with DRC. A copy of this agreement is included in the Documents Section of this package.

# TERMINATION SETTLEMENT PROPOSAL

In accordance with the 22nd of October 2001 agreement between FHIS and the USAID, and in accordance with the 23 October 2001 agreement between FHIS and DRC, the USAID has assumed the rights and obligations of FHIS for the settlement of DRC's termination settlement proposal. DRC must now present its termination settlement proposal directly to the USAID for final payment.

DRC has utilized the USAID Country Contracting Handbook Mandatory Reference #305 Chapters 1 through 4, along with the requirements of Standard Form (SF1436) Total Cost as prescribed by the Federal Acquisition Regulations (48 CFR) in order to formulate and present its termination settlement proposal. The proposal is submitted on AID Form 1440-3 for the certification. All reasonable, allowable, and allocable costs incurred by DRC with respect to Terminated Contract 1A are presented on the Standard Termination Form 1440-3.

## TERMINATION SETTLEMENT COSTS

This project consisted of work at six separate sites. DRC assigned a numbering system for the sites as follows:

31 La Ceiba

32 Tocoa

33 Sonaguera

34 Guanaja

35 Choluteca

36 Amarateca

Each of these sites had a DRC site superintendent and an engineer. The construction at four of the sites was to be accomplished by subcontractors and two sites were to be constructed by DRC's direct forces. The site assignments were as follows:

| Site Number | Site Location | Site Contractor |
|---|---|---|
| 31 | La Ceiba | Cordica |
| 32 | Tocoa | DRC |
| 33 | Sonaguera | Serpic |
| 34 | Guanaja | GAP Associates |
| 35 | Chaluteca | Serpic |
| 36 | Amarateca | DRC |

The major construction materials for all sites were to be purchased by DRC. Site supervision and engineering was also to be furnished at all sites by DRC. The subcontractors were to furnish equipment and labor as well as equipment and labor logistical costs for their relative sites.

DRC's cost proposal is separated into the following categories:

I. DRC Labor And Material Costs For All Sites As Taken From The General Ledger For DRC-Honduras.

II. DRC-Honduras Overhead For Its Office In Tegucigalpa Including Zone Management.

III. DRC Bidding Expenses.

IV. Subcontract Costs For The Various Subcontract Sites:

   A. Site 31, La Ceiba- Cordica

   B. Site 33, Sanguera- Serpic

   C. Site 34, Guanaja- GAP Associates

   D. Site 35, Choluteca- Serpic

V. DRC- U.S. Home Office Overhead

VI. DRC- Post Termination Settlement Expenses

VII. Profit

## CONCLUSION

DRC entered into a contract agreement with FHIS. This contract agreement was subsequently suspended, and later terminated. For a period of 236 days, between 1 March 2001 and 23 October 2001, DRC remained on standby incurring costs until the date of termination.

As per the USAID Country Contracting Handbook, Chapter 2, Procurement of Construction Services, 2.0 Rules, 2.1 **Use of Country Contracting,** "It is usually appropriate that the Borrower/Grantee, acting through a designated Contract Agency (rather than USAID), contract for construction services required to implement projects financed under bilateral agreements." However, through its agreement with FHIS, the USAID has assumed the direct role of the final settlement authority for DRC's termination settlement costs associated with its contract with FHIS. DRC respectfully requests that USAID review the enclosed Termination Settlement Proposal in accordance with the provisions of the USAID Country Contracting Handbook, Section 5, Subsection 34 titled **Termination by the Contracting Agency for Convenience**, Paragraph E. which states the following:

> E. The Contractor and the Contracting Agency shall consult within 30 days of the submission of the claim concerning the whole or any part of the amount to be paid (including any allowance for the fee) to the Contractor by reason of the termination of work. The contract shall be amended accordingly, and the Contractor shall be paid the agreed amount.

DRC looks forward to prompt resolution of its termination settlement proposal.

**PRESIDENCIA DE LA REPUBLICA DE HONDURAS**

# FONDO HONDUREÑO DE INVERSION SOCIAL

**PROGRAMA DE RECONSTRUCCION**

## CONTRATO DE CONSTRUCCION

**SUBPROYECTO :**

**"CONSTRUCCIÓN DE OBRAS DE AGUA POTABLE Y ALCANTARILLADO SANITARIO DEL GRUPO "I-A" DEL PROGRAMA DE RECONSTRUCCION"**

**DIRECCIÓN DE INFRAESTRUCTURA MAYOR (DIM)**

**FHIS-3**

9

# PRESIDENCIA DE LA REPUBLICA
## *FONDO HONDUREÑO DE INVERSIÓN SOCIAL*

### PROGRAMA DE RECONSTRUCCION

### CONTRATO DE CONSTRUCCION

Nosotros, **MOISES STARKMAN PINEL,** hondureño, mayor de edad, Licenciado en Relaciones Internacionales, con domicilio en la Ciudad de Comayaguela, Departamento de Francisco Morazán, quien actúa en su condición de Ministro y Representante Legal del Fondo Hondureño de Inversión Social (FHIS), según Acuerdo No. 017-2000 de fecha 27 de Enero de 2000, Institución desconcentrada de la Presidencia de la República, creada mediante Decreto No. 12-90 de fecha 2 de Marzo de 1990, denominado de aquí en adelante EL FHIS por una parte y por la otra **WILLIAM SID VOGEL,** mayor de edad, con Master en Ciencias de Ingeniería Civil, casado, nacionalidad norteamericana, Pasaporte No. 087874294 emitido en New Orleans el 5 de Agosto de 1999, actuando en su condición de Presidente Ejecutivo de la Empresa **DRC, INC.**, quién en lo sucesivo se denominará el **CONTRATISTA** hemos convenido celebrar, como en efecto celebramos, el presente CONTRATO para la ejecución del Proyecto: **"CONSTRUCCION DE OBRAS DE AGUA POTABLE Y ALCANTARILLADO SANITARIO DEL GRUPO IA DEL PROGRAMA DE RECONSTRUCCION",** el que se financiará con fondos **USAID** ( Proyecto No.522-0410.03), y se regulará por las disposiciones siguientes: **PRIMERA: DEFINICIONES E INTERPRETACIONES: FHIS:** Fondo Hondureño de Inversión Social. **Ministro :** Ministro del FHIS. **USAID:** Agencia de los Estados Unidos de América para el Desarrollo Internacional. **DIM:** Dirección de Infraestructura Mayor. **Director DIM:** Director de Infraestructura Mayor. **Ingeniero Inspector:** Ingeniero Civil colegiado dependiente de la DIM que supervisa una zona de trabajo. **Supervisor:** Empresa nombrada y contratada por el FHIS, que supervisa la ejecución y buena calidad de la obra. **Contratista:** Firma o Consorcio de Firmas o Compañía cuya propuesta ha sido aceptada por el FHIS, para ejecutar el Proyecto de acuerdo a las

10

# PRESIDENCIA DE LA REPUBLICA
## *FONDO HONDUREÑO DE INVERSIÓN SOCIAL*

especificaciones y condiciones respectivas. **Administración Delegada:** Trabajos contingenciales no considerados bajo precios unitarios que se pagarán al costo más quince (15) por ciento. **SEGUNDA: El CONTRATISTA** con elementos suficientes, que suministrará por su cuenta, se obliga a realizar los trabajos de Construcción de Obras pertenecientes al Grupo IA, de conformidad con las especificaciones, disposiciones especiales y demás documentos contractuales. Tales documentos anexos, están descritos en la Cláusula Quinta y forman parte de éste contrato. **TERCERA: MONTO DEL CONTRATO.** El valor de éste contrato es de **OCHO MILLONES TRESCIENTOS SETENTA Y TRES MIL NOVENCIENTOS TREINTA DOLARES AMERICANOS CON 77/100 (US$. 8,373,930.77),** según el detalle que aparece en el Anexo No.1 (Oferta ), y que corresponde a : **1. Pago por Movilización** por un monto de **CUATROCIENTOS SETENTA Y TRES MIL NOVECIENTOS NOVENTA Y SEIS DOLARES AMERICANOS CON 08/100 (US$. 473,996.08)** y **2. Pago por Ejecución de la Obra** por un monto de **SIETE MILLONES OCHOCIENTOS NOVENTA Y NUEVE MIL NOVECIENTOS TREINTA Y CUATRO DOLARES AMERICANOS CON 69/100 (US$. 7,899,934.69). CUARTA: PLAZO DE LOS SERVICIOS.** Para la ejecución de los trabajos objeto de éste contrato el **CONTRATISTA** se compromete y obliga a terminar a satisfacción del FHIS en el plazo de **ONCE (11) MESES CALENDARIO** contados a partir de la fecha en que se emita la Orden de Inicio y de acuerdo al Programa de Trabajo aprobado por la DIM (Ver Cláusula Novena ). Si la obra no se ejecutaré en el plazo programado, el FHIS aplicará al **CONTRATISTA**, una multa por cada día de retraso equivalente a UN DOLAR (US$1.00) por cada millar de dolares (0.1% del monto de ejecución) por subproyecto, sin perjuicio de la resolución del contrato. Si la demora se produjere por causas no imputables al CONTRATISTA, el FHIS autorizará la prórroga del plazo por un tiempo igual al del atraso justificado, sin responsabilidad de las partes. **QUINTA: DOCUMENTOS DEL CONTRATO:** El CONTRATISTA se obliga a efectuar las obras objeto de este contrato de acuerdo con los siguientes documentos anexos, que quedan incorporados a éste documento y forman parte integral del mismo tal:

(11)

# PRESIDENCIA DE LA REPUBLICA

## *FONDO HONDUREÑO DE INVERSIÓN SOCIAL*

como si estuvieran escritos en él: 1) Este contrato, sus anexos y cualquier suplemento de él. 2) Garantía de Cumplimiento de Contrato. 3) Declaración Jurada del Licitante. 4) Garantía para el Pago de Gastos por Movilización, 5) Garantía de Buena Calidad de Obra. 6) Cláusulas Obligatorias del Contrato 7) Condiciones Generales. 8) Condiciones Especiales. 9) Desglose de Oferta (Vease Tomo II). 10) Especificaciones Técnicas.(Vease Tomo III) 11) Programa de Ejecución aprobado por el FHIS. 12) Lista certificada y firmada de cotizaciones sobre materiales recibidos por el contratista en caso de suministro, la que deberá entregar diez (10) días hábiles después de la firma del contrato. En caso de haber discrepancias entre este contrato y las Cláusulas Obligatorias del Contrato, privara lo expuesto en las Cláusulas Obligatorias del Contrato. **SEXTA:** **SUPERVISION**: El Ingeniero Inspector y/o el Supervisor, tendrán plena facultad y autorización para suministrar al CONTRATISTA, en su caso y durante el curso de ejecución de las obras, aquellos planos e instrucciones adicionales que resulten necesarios para la debida y adecuada ejecución de las obras, y el CONTRATISTA deberá dar cumplimiento a los mismos. **SEPTIMA:** **GARANTIAS. El CONTRATISTA** se obliga a rendir las siguientes garantías: **a) Garantía de Pago por Movilización,** por una cantidad igual al cien (100) por ciento del monto del pago por movilización, con vigencia hasta la fecha en que el Contratista justifique o liquide el monto total del pago por movilización, la cual deberá ser presentada por el contratista antes de hacerse efectivo el pago por movilización. Esta garantía debera ser rendida por el contratista dentro de los ocho (8) días hábiles siguientes a la suscripción del contrato. **b) Garantías de Fiel Cumplimiento de Contrato** por una suma equivalente al quince (15) por ciento del monto total de la obra con vigencia desde el inicio del proyecto hasta tres (3) meses después del plazo previsto para la ejecución de las obras. Esta garantía deberá ser rendida por el contratista dentro de los ocho (8) días hábiles siguientes a la suscripción del contrato. **c)Garantía de Buena Calidad de Obra**, por una cantidad igual al cinco (5) por ciento del monto total de la obra, la cual tendrá una duración de un año a partir de la fecha de entrega de la obra. **OCTAVA:**

(12)

# PRESIDENCIA DE LA REPUBLICA

## *FONDO HONDUREÑO DE INVERSIÓN SOCIAL*

**MODIFICACIONES DE CONTRATO.** Cualquier modificación o cambio del presente contrato se hará por escrito y firmado por las partes contratantes, previa aprobación de la USAID. Toda modificación o cambio no aprobado por la USAID, en los montos y/o alcances de las obras , no será financiado por ésta. **NOVENA: PROGRAMA DE TRABAJO.**El CONTRATISTA se obliga a presentar y someter a aprobación del FHIS, el Programa de Trabajo Definitivo y el Programa de Desembolsos a más tardar quince (15) días calendario después de suscrito éste contrato, mientras no se haya cumplido con éste requisito no se le dará trámite de pago a ninguna estimación de obra. **DECIMA: ORDEN DE INICIO.** A menos que se indique otra cosa en la ORDEN DE INICIO, EL CONTRATISTA deberá de dar inicio a las obras dentro de un plazo no mayor a los cinco (5) días calendario siguientes a la fecha de recibida la ORDEN DE INICIO, y se compromete y obliga a proceder a su realización con la debida prontitud y sin demora alguna. **UNDECIMA:PAGO POR MOVILIZACION.** El CONTRATISTA podrá recibir un pago inicial por concepto de Gastos por Movilización, cuyo monto estará especificado en su Oferta de Licitación en un renglón independiente del correspondiente a la ejecución de las obras. El pago por Movilización será aprobado por la DIM dependiendo del tipo y localización de los subproyectos, y no podrá ser mayor del seis por ciento (6%) del costo de ejecución de las obras. El trámite de pago por movilización se realizará una vez que sea aprobado por la DIM y que el CONTRATISTA haya rendido las garantías bancarias siguientes: 1. Garantía de Cumplimiento de Contrato y 2. Garantía de Pago por Movilización. El pago por Movilización se hará efectivo hasta que EL CONTRATISTA demuestre mediante la presentación de las facturas correspondientes, que ha incurrido en gastos de movilización requeridos para reunir personal, compra y transporte de equipo, compra de materiales y/o otros costos complementarios (Véase Adjunto A, Capítulo 13 de las Cláusulas Obligatorias de USAID). Los bienes y/o servicios que contengan las facturas deberán ser de origen de Honduras y/o de los Estados Unidos de América. **DUODECIMA: PROCEDIMIENTO DE PAGO.** Remitirse a lo estipulado en la Cláusulas Obligatorias del Contrato de Construcción (Adjuntos A, B,

(13) WW

PRESIDENCIA DE LA REPUBLICA
*FONDO HONDUREÑO DE INVERSIÓN SOCIAL*

respectivamente). En caso de que el Contratista sea de origen de los Estados Unidos de América y éste solicite que sus pagos se efectuen en US$. (Dólares Americanos), estos se harán de acuerdo a lo estipulado en la Cláusulas Obligatorias del Contrato de Construcción. La USAID hará los pagos directamente al Contratista previa aprobación de toda la documentación de pago por parte de DIM/FHIS. **DECIMA TERCERA: RECONOCIMIENTO DE AUMENTO DE COSTOS.** Las alzas en los precios de los materiales de construcción, servicios y/o mano de obra usados o consumidos directamente en la obra y plenamente comprobados mediante la documentación correspondiente, que se den con posterioridad a tres (3) meses después de la fecha de la firma del contrato de construcción serán reconocidos al CONTRATISTA, previa solicitud escrita y justificada, presentada al FHIS y aceptada por este. El Contratista deberá presentar al FHIS el reclamo por alza de precios que haya ocurrido con posterioridad a los tres (3) meses después de la fecha de la firma del contrato, dentro del período de treinta (30) días a partir de la fecha que se presentare el aumento, transcurrido este plazo perderá todo derecho a reclamo. Para los efectos anteriores el FHIS elaborará la lista de los materiales y servicios que se utilizarán en el subproyecto y que serán objeto de dicho reconocimiento. Este listado de precios será respaldado por cotizaciones de casas comerciales o cualquier otro tipo de documento que demuestre fehacientemente la veracidad del mismo. El CONTRATISTA deberá dar todas las facilidades y las documentaciones en la forma que el FHIS estime conveniente para comprobar los aumentos de precios. **DECIMA CUARTA: LIMITE AL MONTO TOTAL DE LA OBRA.** La suma de todos los incrementos a la obra, incluidos los aumentos de obra y de precios, no podrán superar el treinta (30) por ciento del monto original. **DECIMA QUINTA: RETENCION.** De los pagos mensuales se retendrá el cinco (5) por ciento en carácter de garantía por trabajo defectuoso y se devolverá al Contratista hasta que el FHIS haya aceptado la obra. **DECIMA SEXTA: COLOCACION DE ROTULOS:** El CONTRATISTA deberá colocar a su costo en los lugares de trabajo, tres (3) rótulos montados en postes rollizos de madera curada de seis (6) pulgadas de diámetro

(14)

FONDO HONDUREÑO DE INVERSIÓN
DIRECTOR LEGAL
FHIS

UNIDAD PREINTERVENCIÓN
JEFATURA
FHIS

**PRESIDENCIA DE LA REPUBLICA**
***FONDO HONDUREÑO DE INVERSIÓN SOCIAL***

mínimo o madera curada de seis por seis (6X6) pulgadas, con toda seguridad y durabilidad, plenamente visibles de acuerdo a las dimensiones y características del formato de rótulo. Una vez concluidos los subproyectos, el Contratista deberá colocar una placa alusiva a los mismos.**DECIMA SEPTIMA: EMPLEO DE MIEMBROS DE LA COMUNIDAD.** El CONTRATISTA y las demás empresas individuales o sociales que contrate el FHIS, se comprometen a emplear a personas pertenecientes a las comunidades beneficiadas sin discriminación de la mujer. Si el Contratista tuviera problemas para contratar su personal con personas pertenecientes a la comunidad, éste podrá contratar dicho personal fuera de la misma, previa autorización del Director de la DIM, cuando no se trate de personal administrativo. **DECIMA OCTAVA: INGENIERO RESIDENTE.** El CONTRATISTA deberá mantener por lo menos un Ingeniero Residente por zona de trabajo, para la ejecución de las obras de éste contrato hasta terminarlas, y además durante un tiempo adicional que el Ingeniero Supervisor considere necesario, para el debido cumplimiento de las obligaciones del Contratista. El Ingeniero Residente (Ingeniero Civil colegiado), deberá estar al cien por ciento dedicado a la ejecución de la obra. **DECIMONOVENA: IMPUESTO, EXONERACIONES.** La ejecución del Proyecto está exenta de impuestos y gravámenes. **VIGESIMA: PROCEDENCIA DE LOS BIENES Y SERVICIOS.** El CONTRATISTA deberá presentar certificación de que su empresa y los bienes y servicios utilizados en el Proyecto son de origen de Honduras y/o los Estados Unidos de América. **VIGESIMA PRIMERA: DEMORAS Y RECLAMOS.** 1) Notificación de Demoras: El CONTRATISTA se compromete a informar por escrito al FHIS o a su representante, el acaecimiento de cualquier hecho o circunstancia que pudiese demorar o impedir el normal desarrollo o terminación del trabajo objeto de este contrato en el plazo estipulado. El CONTRATISTA informará, asimismo de las medidas que se han tomado para corregir o atender dicha situación. Queda entendido que el CONTRATISTA, dentro de los tres (3) días subsiguientes de que se inicie una demora, lo notificará al FHIS por escrito, explicando las causas de la misma. Este último evaluará los hechos y alcances de la demora y comunicará al

15

FONDO HONDUREÑO DE INVERSIÓN SOCIAL
SUB DIRECCIÓN PROYECTOS ESPECIALES Y OPERACIONES

**PRESIDENCIA DE LA REPUBLICA**
***FONDO HONDUREÑO DE INVERSIÓN SOCIAL***

contratista dentro de un período razonable de tiempo su decisión al respecto. **VIGESIMA SEGUNDA: RESOLUCION O TERMINACION DEL CONTRATO. 1)** EL FHIS podrá sin responsabilidad alguna dar por terminado el derecho del Contratista para proseguir la ejecución de la obra contratada por las siguientes causas: a) En caso de evidente negligencia del Contratista en la ejecución de los trabajos. b) Si ejecuta los trabajos en forma inadecuada, o si interrumpe la continuidad de la obra, o por cualquiera otras causas no desarrolla el trabajo en forma aceptable y diligente, la negligencia se comprobará con dictámenes e informes del Supervisor y será evaluada por el FHIS. c) Si retirare el equipo sin la debida autorización de los representantes del FHIS. d) Si dentro del plazo que el FHIS le hubiese fijado, no presentare las cauciones o ampliaciones de las mismas a que está obligado, conforme éste contrato. e) Si cometiese actos dolosos o culposos en perjuicio de la Hacienda Pública, o en perjuicio de la ejecución de los trabajos contratados a juicio y calificación del FHIS. f) Si dejare de cumplir con cualesquiera de las obligaciones que contrae en éste contrato. **VIGESIMA TERCERA: RESPONSABILIDAD LABORAL.** El CONTRATISTA será el único responsable del pago de las obligaciones laborales que se deriven de la contratación del personal para la ejecución del Proyecto. Por consiguiente deberá afrontar y solucionar todos los problemas de tipo laboral que se presentaren durante y después de la construcción de la obra. **VIGESIMA CUARTA: COMPROMISOS Y OBLIGACIONES DEL CONTRATISTA.** El CONTRATISTA se compromete y obliga por este acto a prestar cooperación para que el proyecto se realice de acuerdo al programa original y atender las recomendaciones que para la correcta ejecución de la obra le hagan los empleados o funcionarios del FHIS. **VIGESIMA QUINTA: EFECTOS LEGALES DE APROBACION DE LA USAID.** Este contrato será financiado con fondos de la USAID, la que se reserva derechos de aprobar los términos de éste contrato, el CONTRATISTA y cualquier o todos los planos, informes, especificaciones, subcontratos, documentos de licitación, diseños u otros documentos relacionados con éste contrato. Las partes además comprenden y convienen que la USAID al reservarse cualquier o todos los derechos de aprobación

16

**PRESIDENCIA DE LA REPUBLICA**
***FONDO HONDUREÑO DE INVERSIÓN SOCIAL***

FONDO HONDUREÑO DE INVERSION
DIRECTOR LEGAL
UNIDAD PREINTERVENCION
JEFATURA
FHIS

anterior, obra solamente como entidad financiera, para asegurar el uso adecuado de los fondos suministrados por el Gobierno de los Estados Unidos de América y que cualquier decisión de la USAID para ejercer o abstenerse de ejercer estos derechos de aprobación, lo hará en su calidad de entidad financiera en el curso de financiamiento de este proyecto, y no deberá interpretarse como que la USAID, es parte del presente contrato. Las partes comprenden y convienen en que la USAID podrá eventualmente, tratar asuntos relacionados con estos derechos y con el proyecto del que éste contrato es parte, sin que con ello incurra en responsabilidad u obligación legal alguna respecto a las partes. Cualquier aprobación (u omisión de desaprobación) por parte de la USAID no impedirá que el FHIS o la USAID hagan valer cualquier derecho, ni releva al Contratista de cualquier obligación que pudiera tener respecto al FHIS o la USAID. **VIGESIMA SEXTA: SOLUCIONES DE CONTROVERSIAS Y DISPUTAS.** Remitirse a lo estipulado en las Cláusulas Obligatorias del Contrato de Construcción. **VIGESIMA SEPTIMA: LIBROS Y REGISTROS.** Para asegurar el cumplimiento de los requisitos del contrato, tales como fuentes y origen de los materiales, equipo y servicios utilizados, montos de exención de impuestos, excluyendo costos y otros requerimientos, el CONTRATISTA deberá mantener libros y registros adecuados concernientes a las transacciones bajo el Contrato y los pondrá a disposición del representante del FHIS y a los de la USAID, debidamente autorizados para su inspección y auditoría, durante el término del contrato y por un período de tres (3) años contados de la fecha del último pago bajo el contrato. **VIGESIMA OCTAVA: CESION Y SUBCONTRATACION.** EL CONTRATISTA podrá subcontratar hasta un máximo del 40% del monto de Ejecución de la Obra, teniendo que contar con la debida aprobación de la DIM, y además deberá tener por escrito de parte de su Banco o Compañía de Seguros(Garantías), su responsabilidad solidaria con respecto al Subcontratado. El CONTRATISTA no podrá ceder su obligación de cumplir lo estipulado en este contrato, ni subcontratar a terceros sin contar con el consentimiento previo y por escrito del FHIS y de la USAID. **VIGÉSIMA NOVENA** : Una vez finalizado cada uno

(17)

FONDO HONDUREÑO DE INVERSION SOCIAL
SUB DIRECCION PROYECTOS

# PRESIDENCIA DE LA REPUBLICA
## *FONDO HONDUREÑO DE INVERSIÓN SOCIAL*

de los subproyectos que conforman el Proyecto, estos serán entregados a las **Municipalidades** beneficiadas previa aceptación por estas. **TRIGESIMA. FINANCIAMIENTO :** El financiamiento total de este Contrato sera con fondos del Programa de Reconstrucción, Convenio de Donación 522-0410.03. **TRIGESIMA PRIMERA. ANTICORRUPCION :** Ninguna oferta, pago, consideración o beneficio de cualquier tipo que constituye una práctica corrupta o ilegal deberá llevarse a cabo, ya sea directa o indirectamente, como incentivo o recompensa por la adjudicación de este contrato. Cualquiera de estas prácticas será motivo de cancelación o no adjudicación del contrato y para cualesquier otra acción adicional, ya sea civil y o criminal, que sea necesaria. **TRIGESIMA SEGUNDA: ACEPTACION.** Las partes aceptan las anteriores estipulaciones y firman el presente contrato en la ciudad de Tegucigalpa, M.D.C., a los veintinueve días del mes de diciembre del año dos mil.

**WILLIAM SID VOGEL**
PRESIDENTE EJECUTIVO **DRC, Inc.**

**MOISES STARKMAN PINEL**
MINISTRO - **FHIS**

FONDO HONDUREÑO DE INVERSION SOCIAL - MINISTRO

REPRESENTANTE DE USAID
TESTIGO

FONDO HONDUREÑO DE INVERSION SOCIAL - DIRECTOR LEGAL - FHIS

UNIDAD ... - JEFATURA - FHIS

FONDO HONDUREÑO DE INVERSION SOCIAL - SUB DIRECCION PROYECTOS ESPECIALES Y CONTRATACIONES - FHIS

FHIS/USAID
PROGRAMA DE DESARROLLO MUNIC.
FONDOS DE DONACION USAID No. 522-0410

**LICITACION DE COSTRUCCION DE OBRAS DE AGUA Y SANEAMIENTO PDM 009-2000(GRUPO IA)**

| No. | DEPTO./ MUNICIPIO | TIPO DE PROYECTO | TIEMPO ESTIMADO (meses) | MONTO EN US DOLARES | FUENTE DE FINANCIAMIENTO |
|---|---|---|---|---|---|
| | ZONA GEOGRAFICA I | | | | |
| | ATLANTIDA | | | | |
| 1 | 1.- La Ceiba | AS | 10 | 1,563,018.28 | 522-0410.03 |
| | COLON | | | | |
| 2 | 2.- Sonaguera | AP | 6 | 332,363.86 | 522-0410.03 |
| 3 | 3.- Sonaguera | AS | 10 | 1,837,588.76 | 522-0410.03 |
| | ISLAS DE LA BAHIA | | | | |
| 4 | 1.- Guanaja | AP | 10 | 1,030,080.13 | 522-0410.03 |
| | ZONA GEOGRAFICA III | | | | |
| | CHOLUTECA | | | | |
| 5 | 1.- Choluteca | AS | 11 | 2,306,432.63 | 522-0410.03 |
| | FRANCISCO MORAZAN | | | | |
| 6 | 1.- Distrito Central-Amarateca | SP | 10 | 830,451.03 | 522-0410.03 |
| | | | | | |
| | MONTO TOTAL EJECUCION | | | 7,899,934.69 | |
| | PAGO POR MOVILIZACION | | | 473,996.08 | |
| | TOTAL GENERAL | | | 8,373,930.77 | |

**AP:** AGUA POTABLE, **AS:** ALCANTARILLADO SANITARIO, **SP:** SERVICIOS MULTIPLES
**522-0410=** PROGRAMA DE RECONSTRUCCION POR EL HURACAN

**RECONSTRUCTION PROGRAM**

**CONSTRUCTION CONTRACT**

We MOISES STARKMAN PINEL, Honduran, of legal age, Graduate of International Relationship, living in the City of Comayaguela, Department of Francisco Morazan who acts in his condition as Minister and Legal Representative of the Honduran Fund of Social Investment (FHIS), according to Agreement No. 017 2000 dated January 27th, 2000, decentralized institution from the Presidency of the Republic, created by means of Ordinance No. 12 90 dated March 2nd, 1990, on one hand and from now on will be denominated FHIS, and for the other WILLIAM SID VOGEL, of legal age, Master in Sciences in Civil Engineering, North American, Passport No. 087874294 issued in New Orleans August 5th, 1999, acting in his condition President of DRC, INC. who was denominated the CONTRACTOR we have agreed in the following CONTRACT to make the Project: CONSTRUCTION OF WORKS OF DRINKABLE WATER AND SANITARY SEWER SYSTEM OF GROUP IA OF THE RECONSTRUCTION PROGRAM", which will be financed with USAID funds (Project No. 5220410.03), and it will be regulated by the following dispositions: **FIRST:** DEFINITIONS AND INTERPRETATIONS: FHIS: Honduran Fund of Social Investment. **Minister:** Minister of FHIS. **USAID: Agency of the United States of America for the International Development.** DIM: Higher Infrastructure Administration. **Managing DIM:** Director o higher Infrastructure. **Inspector Engineer:** Registered Civil Engineer dependant of the DIM that supervises a working area. **Supervisor:** Company assigned and hired by the FHIS that supervises the execution and good quality of the work. Contractor: Firm or Consortium of Firms or Company whose proposal has been accepted by the FHIS, to execute the Project according to those specifications and conditions. **Delegate Administration:** Contingency works not considered under unitary prices that will be paid at the cost plus fifteen (15) percent. **SECOND:** The CONTRACTOR with enough elements that will provide on its own, is obligated to carry out the works of Construction of Works belonging to Group IA, according with the specifications, special dispositions and other contractual documents. Such annexed documents, are described in the Fifth Clause and they are part of this contract. **THIRD: The Amount of the contract.** The value of this contract is of EIGHT MILLION THREE HUNDRED SEVENTY AND THREE THOUSAND NOVENCIENTOS THIRTY AMERICAN DOLLARS WITH 77 / (US $. **8,373,930.77), according to the detail that appears in the Annex No. I** (Offer), and that corresponds to: 1. Payment for Mobilization for the amount of FOUR HUNDRED SEVENTY AND THREE THOUSAND NINE HUNDRED NINETY SIX AMERICAN DOLLARS WITH 08 / 100 (US

;. 473,996.08) and 2. Payment for Execution of the Work for the amount of SEVEN MILLION IT HUNDRED NINETY AND NINE THOUSAND NINE HUNDRED THIRTY FOUR AMERICAN DOLLARS WITH 69 / 100 (US $. 7,899,934.69). FOURTH: TERM OF SERVICES. For the execution of the works stated in this contract the CONTRACTOR commits and forces to finish to satisfaction of he FHIS in the term of ELEVEN (11) CALENDAR MONTHS starting from the date in that the Order of Beginning is emitted and according to the Program of Work approved by the DIM (see Ninth Clause). If the work is not executed in the programmed term, the FHIS will apply to the CONTRACTOR, a fine for every late day equivalent to A DOLLAR (US$1.00) for every thousand dollars (0.1% of the amount of execution) for subproject, without any damage of the resolution of the contract. If the delay caused by non attributable conditions to the CONTRACTOR, the FHIS will authorize a term similar to that of the justified delay, without responsibility of the parts. **FIFTH:** DOCUMENTS OF THE CONTRACT: The CONTRACTOR is obligated to make the works stated in this agreement t with the following annexed documents that are incorporate to this document and they are part of the same such as if they were written in it: 1) This contract, their annexes and any supplement of the it. 2) guarantee of Execution of Contract. 3) Sworn declaration of the Bidder. 4) Guarantee for the Payment of Expenses for Mobilization, 5) Guarantee of Good Quality Work. 6) gatory clauses of the Contract 7) General Conditions . 8) Special conditions 9) Offer breakdowns (See Volume IIII) 10. Technical specifications. (See Volume III) 11) Program of Execution approved by the FHIS. 12) certified list and signed of estimates on materials received by the contractor in the event of supply, the one that will give ten (10) working days after securing this contract. In the event of having discrepancies between this contract and the Obligatory Clauses of the Contract, it will be deprived what is stated in the Obligatory Clauses of the Contract. **SIXTH:** SUPERVISION: The Inspecting Engineer and/or the Supervisor, they will have full ability and authorization to supply to the CONTRACTOR, during the course of execution of the works, those plans and additional instructions that are necessary for the appropriate execution of the works, and the CONTRACTOR will give execution to the same ones. SEVENTH: GUARANTEES. The CONTRACTOR is obligated to surrender the following guarantees: to) Guarantee of Payment for Mobilization, for the same amount of one hundred (100) percent of the amount of the payment for mobilization, valid until the Contractor justifies or liquidate the total amount of the payment for mobilization, which will be presented by the contractor before becoming effective the payment for 'lizaci6n. This guarantee will be surrendered by the contractor within the following eight (8) orking days on the signing of the contract. **b)** Guarantees of full Execution of Contract for an equivalent sum at the fifteen (15) percent of the total amount of the work with validity from the

beginning of the project up to three (3) months after the foreseen term for the ejecuci6n of the works. guarantee will be surrendered by the contractor within the following eight (8) working days on the suscripci6n of the contract. **c)**Guarantee of Good Quality of Work, for a quantity similar to the five (5) percent of the total amount of the work, which will last one year starting from the date of delivery of the work. EIGHTTH: MODIFICATIONS OF CONTRACT. Any modifications or changes of the present contract will be made in writing and signed by the contracting parties, previous approval of USAID. All modifications or changes not approved by USAID, in the amounts and/or scopes of the works, it won't be financed by this. **NINETH:** Working Program. The CONTRACTOR is obligated to present and subject to approval of the FHIS, the Program of Definitive Work and the Program of Payments no longer than fifteen (15) calendar days after undersigned this contract, if this requirement is not been fulfilled no payment will be processed of any work. TENTH: ORDER OF BEGINNING. Unless another thing is indicated in the ORDER OF BEGINNING, THE CONTRACTOR will begin the works inside a term not longer than five (5) calendar days following to the date of having received the ORDER OF BEGINNING, and commits and forces to proceed to its realization immediately an with no delays whatsoever. **ELEVENTH: PAYMENT FOR MOBILIZATION.** The CONTRACTOR will be able to receive an initial payment for concept of Expenses for Mobilization, amount that will I be specified in its Offer of Bid in an independent line corresponding to the execution of the works. The payment for Mobilization will be approved by the DIM depending on the type and localization of the subprojects, and it won't be higher than six percent (6%) of the cost of execution of the works. The processes of payment for mobilization will be carried out once it is approved by the DIM and that the CONTRACTOR has surrendered the following bank guarantees: 1. Guarantee of Execution of Contract and 2. Guarantee of Payment for Mobilization. The payment for Movilizaci6n will become effective until THE CONTRACTOR demonstrates by means of presenting the corresponding invoices that has incurred in expenses of movilizaci6n required to gather personnel, purchases and transportation of equipment, purchase of material and/or other complementary costs (See Enclosed A, Chapter 13 of the Obligatory Clauses of USAID). The goods and/or services that contain the invoices will be Hondurans and/or of the United States of America. **TWELFTH: PROCEDURE OF PAYMENT.** To be remitted on what is specified in the Obligatory Clauses of the Contract of Construcci6n (Enclosed A and B, respectively). In case the Contractor is from the United States of America and requests that payments are made in US $. (American dollars), these they will be made according to that specified in the Obligatory Clauses of the Contract of Construcci6n. USAID will make the payments directly to the Contractor previously approving the whole documentaci6n of payment on the part of DIM/FHIS. **thirteenth: RECOGNITION OF INCREASE OF COSTS.** The rises

in the prices of the construction materials, services and/or manpower used or consumed directly in work and fully proven by means of documentaci6n and that are given with three (3) months after the date of the signature of the contract of construcci6n they will be recognized to the CONTRACTOR, previous written application and justification, presented to and accepted by FHIS. The Contractor will present to FHIS the claim for increase of prices that will happen three (3) months after the date of the signature of the contract, within thirty (30) days after presenting the increase, after this term all right to claim will be lost. For the previous effects the FHIS has made the list of the materials and services that will be used in the subproject and that they will be object of this recognition. This listing of prices will be supported by estimates of commercial businesses or any other type of document that demonstrates the truthfulness of it. The CONTRACTOR will give all the facilities and the documentations in the form that the FHIS estimates conveniently to check the increases of prices. **FOURTEENTH: LIMITS TO THE TOTAL AMOUNT OF THE WORK.** The sum of all the increments to the work, included the work increases and of prices, won't be able to overcome the thirty (30) percent of the original amount . Fifteenth **: RETENTION.** Of the monthly payments it will be retained (5) percent as a guarantee for faulty work and it will be returned to the Contractor until the FHIS has accepted the work. Sixteenth**: PLACEMENT OF SIGNS: The** CONTRACTOR will place at its cost in the working places, three (3) signs mounted in cured wooden plump posts of six (6) inches of diameter minimum or cured wood of six by six (6X6) inches, with all security and durability, fully visible according to the dimensions and characteristic of the format. Once concluded the subprojects, the Contractor will place an allusive badge to the same ones. **SEVENTEENTH: EMPLOYMENT OF MEMBERS OF THE COMMUNITY.** The CONTRACTOR and the other individual or social companies that the FHIS hires, are commit to use people belonging to the communities benefited, without the woman's discrimination. If the Contractor has problems hiring personnel from people belonging to the community, the contractor will be able to hire this personnel outside the community , previous authorization from the Director of the DIM, when is not administrative personnel. Eighteenth**: Live-in ENGINEER** The CONTRACTOR will maintain at least a live-in Engineer for working area, for the execution of the works of this contract until finishing them, and also during an additional time that Supervisor Engineer considers necessary, for the due execution of the Contractor's obligations. Live-in Engineer (register Civil Engineer), will be one hundred percent dedicated to the execution of the work. **NINETEENTH: TAX, DISCHARGES.** The execution of the Project is exempt of taxes and obligations. **TWENTIETH: ORIGIN OF THE GOODS AND SERVICES.** The CONTRACTOR will present certification that its company and the goods and services used in the Project are from Honduras and/or the United States of America. **TWENTY-**

**FI ST: DELAY AND Claims.** 1) notification of Delays: The CONTRACTOR commits to inform in ng to the FHIS or its representative, in the event of any circumstance that can delay or impede the normal development or termination of the work object of this contract in the specified term. The C NTRACTOR will inform, also of the measures that they will take to correct or to assist this sit ation. It is understood that the CONTRACTOR, within the three (3) days after a delay begins, mu t notify it in writing to the FHIS, explaining the causes of it. The FHIS will evaluate the facts and rea hes of the delay and will tell the one contractor in a reasonable period of time their decision in thi matter. **TWENTY SECOND: RESOLUTION OR TERMINATION OF THE CONTRACT.** 1) THE FH S will be able and without any responsibility cancel the Contractor's right to the execution of the wo k hired, due to the following causes: a) in the event of evident negligence of the Contractor in the ex cution of the works. b) If it executes the works in inadequate form, or if it interrupts the continuity of the work, or for any other reasons it doesn't work in an acceptable and diligent form, the ne ligence will be proven with verdicts and reports of the Supervisor and it will be evaluated by the FH S. c) If it removes the equipment without the due authorization of the representatives of the FHIS. d) within the term that the FHIS has settle , it doesn't present the cautions or amplifications that are f ed in this contract. e) If it makes deceitful acts or guilty in damages of the government finance, or amage of the execution of the works according to the qualifications of the FHIS. f) If the co tractor stops to fulfill any of the obligations that acquires in this contract. **TWENTY THIRD: LA OR RESPONSIBILITY.** The CONTRACTOR will be the only responsible for the payment of the lab r obligations that are derived of personnel's recruiting for the execution of the Project. Co sequently it will confront and solve all the labor type problems that are present during and after the construction of the work. **TWENTY FOUR: COMMITMENTS AND OBLIGATIONS OF THE CO NTRACTOR.** The CONTRACTOR commits and forces for this act to give cooperation so that the pro ect is carried out according to the original program and to assist the recommendations that are ma e by the employees or officials of the FHIS for the correct execution of the work. **TWENTY FIF H: LEGAL EFFECTS OF APPROVAL OF THE USAID.** This contract will be financed with funds of SAID, which reserves its rights in approving the terms of this contract, the CONTRACTOR and any or all, the plans, reports, specifications, subcontracts, bid documents, designs or other doc ments related with this contract. The parts also understand and t suit that USAID when res rving any or all the approval previous rights , it only works as financial entity, to assure the one it appropriate of the funds given by the Government from the United States of America and that decision of USAID to exercise or to abstain from exercising these approval rights, it will make it in t eir quality of financial entity in the course of financing of this project, and it won't be interpreted as

that USAID is part of the present contract. The parts understand and suit in that USAID will be able .eal with matters related with these rights and with the project of the one that this contract is part, without incurring in any responsibility or legal obligation. Any approval (or disapproval omission) on the part of USAID won't prevent that the FHIS or USAID make worth any right, neither it raises the Contractor of any obligation that could have regarding the FHIS or USAID. **TWENTy SIXTH: SOLUTIONS OF CONTROVERSIES AND DISPUTES.** To be remitted of what is specified in the Obligatory Clauses of the Contract of Construction. **TWENTIETH SEVENTH: BOOKS AND REGISTRATIONS.** To assure the execution of the requirements of the contract, such as sources and origin of the materials, equipment and used services, amount of taxes exempt , excluding costs and other requirements, the contractor will maintain books and concerning appropriate registrations to the transactions under the Contract and will make them available to the representative's of the FHIS and those of USAID, properly authorized for her inspection and audit, during the conclusion of the contract and for a period of three (3) years counting to the date of the last payment of the contract. **TWENTY EIGHTH: SURRENDER AND SUBCONTRATACION.** THE CONTRACTOR will be able to subcontract a maximum of 40% of the amount of Execution of the Work, having to have the final approval of the DIM, and also must have in writing on behalf of its Bank or Insurance Company guarantees), its responsibility regarding to the one Subcontracted. The CONTRACTOR won't be able to give its obligation of completion that is specified in this contract, neither to subcontract third parties without having the previous consent and in writing of the FHIS and of e USAID. **TWENTY NINETH**: Once each one and every one of the subprojects that conform the Project are finished, these they will be given to the Municipalities benefited previously acceptance by these. Thirtieth. FINANCING: The total financing of this Contract will be with funds of the Reconstruction Program Grant Agreement 522 0410.03. THIRTY FIRST. ANTICORRUPCION: No offer, payment, consideration or benefit of any type that one constitutes a corrupt practice or illegal will be carried out, neither direct or indirectly, as an incentive or rewards for the award of this contract. Any of these practices it will be a reason of cancellation or non award of the contract and for any other additional action, either civil and or criminal that is necessary. **THIRTY SECOND: ACCEPTANCE.** The parts accept the previous stipulations and they sign the present contract in the city of Tegucigalpa, M.D.C., on the twenty-nine days of the month of December of the year two thousand.

| | |
|---|---|
| **WILLIAM SID VOGEL** | **MOISES STARKMAN PINEL** |
| EXECUTIVE PRESIDENT DRC, Inc. | MINISTER MIS |

± 18:30 HRS.

# PRESIDENCIA DE LA REPUBLICA
## *FONDO HONDUREÑO DE INVERSION SOCIAL*

*Tegucigalpa, M. D. C., 01 de marzo del 2001*
***Oficio No. DL-20-2001***

*Señor*
***FRANCISCO PELAEZ***
***Director Proyectos D.R.C. Inc.***
*Su Oficina*

*Distinguido Señor Pelaez:*

*En atención a su Oficio F2-00-FPO/MSP-010226-01 de fecha 26 de febrero del corriente año, recibido en esta Dirección el día 28 del mismo mes y año, me permito aclararle lo siguiente:*

*a) Nuestro Oficio No. 026-DSM-2001, de fecha 26 de febrero del presente año, atendiendo la Carta de Ejecución de fecha 23 de febrero del 2001, enviada por USAID al Ministerio de Finanzas y al FHIS, constituye una notificación oficial de suspensión, hasta nueva notificación por escrito, en la ejecución del Proyecto "CONSTRUCCION DE OBRAS DE AGUA POTABLE Y ALCANTARILLADO SANITARIO DEL GRUPO 1A DEL PROGRAMA DE RECONSTRUCCION" financiado con fondos de USAID (Proyecto No.522-0410.03).*

*b) Tal y como se le notifica en nuestro Oficio relacionado, de conformidad con los documentos de Licitación, a los cuales ustedes se sometieron, la ejecución del Proyecto a su cargo, está sujeta a las disposiciones del Convenio de Donación suscrito entre el Gobierno de Honduras y la USAID.- En consecuencia, la suspension de financiamiento decretada por la USAID, afecta la ejecución del contrato que DRC Inc. ha suscrito con el FHIS.*

*c) La suspensión decretada por USAID y que el FHIS devenía obligada a notificarles, misma que se hiciera mediante el referido Oficio, implica que a partir de esa fecha, mientras USAID no comunique lo contrario, DRC Inc. no deberá realizar ningún gasto ni contraer nuevos compromisos a cargo de la ejecución del Proyecto, de conformidad con el artículo E. CANCELACION ; RECURSOS.- **Sección E.1.-** SUSPENSION Y CANCELACION.- **literal b)** del Convenio de Donación precitado, el cual literalmente preceptúa: **" Excepto para el pago que las partes están comprometidas a hacer de acuerdo a los compromisos no cancelables, registrados en este Convenio con terceras partes,***

DOCUMENT CONTROL RECEIVED MAR 01 2001 F2-FHI-TI#0/1



26

*Oficio No. DL-20-2001*

***antes de tal suspensión o terminación, la suspension o terminación total de este Convenio o parte del mismo, suspenderá (por el período de la suspensión) o terminará, según sea aplicable, cualquier obligación de las Partes, de proporcionar recursos financieros o de otro tipo al Convenio, o a la parte suspendida o terminada del mismo, según sea aplicable."***

*d) Como consecuencia de la suspension del financiamiento por parte de USAID y por ende de la ejecución del proyecto, mientras dure la suspensión, como medida preventiva DRC Inc. debe proceder de manera inmediata a documentar en legal y debida forma, los compromisos y gastos a que usted hace referencia en su Memorandum, los que serán sometidos oportunamente a consideración de la USAID, para efectos de su pago, de conformidad con la cláusula Duodécima del Contrato de Construcción.*

*Esperando que por este medio estén debidamente aclaradas las inquietudes planteadas en su Memorandum, me suscribo poniéndome a su disposición para cualquier aclaración al respecto.*

*Atentamente,*

***LIC. MOISES STARKMAN PINEL***
*Ministro*

Cc: Joseph F. Lombardo- Director Misión USAID
Ing. Carlos Selva – Cuerpo de Ingenieros Ejército USA
Licda. Ana Eva Gomez – Auditora FHIS
Lic. Jorge Delgado- Auditoría Interna Concurrente
Ing. Ramón Cardona- Director DIM
Lic. Ramón Hostilio López – Director Legal
Ing. Eliu O. Perez – Supervisión Black and Veatch
Arch.

PRESIDENCY OF THE REPUBLIC
HONDURAN SOCIAL INVESTMENT FUND

Tegucigalpa M.D.C., March 1st, 2001

Official Letter No.DL-20-2001

Mr. Francisco Peláez
Project Director DRC Inc

Distinguished Mr. Peláez:

In reference to your letter F2-00-FPO/MSP-010226-01, dated the 26th of the same month and year, the following will answer your questions:

a) Our official letter No.026-DSM-2001, dated the 26th of February of the current year; following the Letter of Execution of 23 February 2001 and sent by USAID to the Ministry of Finance and FHIS is an official notice of suspension of work, until new notification in writing, in the execution of Project *"CONSTRUCTION OF WATER SUPPLY AND SEWER SYSTEMS OF GROUP 1-A OF THE RECONSTRUCTION PROGRAM"* financed by USAID (Project No.522-0410-03).

b) As set down in our Official Letter, according to the Bid Documents which you agreed to obey, the execution of the Project under your responsibility is subject to the rules of the Grant Agreement between the Government of Honduras and USAID. Accordingly, the suspension of the funding decreed by USAID affects the execution of the contract subscribed by DRC Inc., and FHIS.

c) The suspension decreed by USAID that FHIS was under obligation to notify you, and which it did in the official letter of reference, means that from this day on, unless USAID advises us to the contrary, DRC Inc, should not incur in any expense or enter into any obligation which is charged to our project, all according to article E. CANCELATION; RESOURCES, Section E.1. Suspension and Cancelation , b) of the aforementioned Grant Agreement which literally says: "Except for payments which the parties are obligated to make under obligatory agreements, registered in this agreement with third parties before said suspension or termination, the total suspension or termination of this agreement or part there of, will suspend (for the period of suspension) or terminate as applicable, any obligation of the parties to furnish financial resources, or of any other type, to the agreement , or the suspended or terminated part of it, as applicable."

– d) As a consequence of the suspension of funding by USAID and the execution of the work during the period of suspension as a preventive measure must proceed at once to document in a proper and legal manner the obligations and expenses you refer to our memorandum which will be submitted to USADI for consideration and authorization of payment, according to clause TWELVE of the Construction Contract.

I hope I have cleared the doubts mentioned in your Memorandum. Please contact me if any further doubts arise.

Sincerely,

MOISES STARKMAN PINEL
Minister

28