IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DRC, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1124C |
| | ) | (Judge G. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO SUSPEND PROCEEDINGS OR, IN THE ALTERNATIVE, FOR AN ENLARGEMENT OF TIME AND APPENDIX

On January 5, 2005, plaintiff, DRC, Inc., responded to the Government's Motion to Suspend Proceedings or, in the Alternative, for an Enlargement of Time. Defendant, the United States or Government, files the following reply to that response and renews its request that the Court stay the proceedings in this case pending resolution of the fraud allegations currently before the United States District Court for the District of Columbia, in case No. 1:04-cv-01608. In the alternative, if the Court denies our motion to suspend proceedings, the Government requests an enlargement of time of 30 days from the date of the order denying our motion in which to respond to plaintiff's complaint.

While plaintiff spends most of its time arguing the merits of the fraud allegations and the effect of fraud,[1] it appears to

[1]Because the merits of the fraud allegations are not currently before this Court, the United States will not address the merits of the allegations in this reply. The United States,

argue only three points relating to the matter currently before the Court, i.e. whether this case should be stayed to permit the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq., to proceed in the district court. Those points are: (1) that the contract that is the subject of the FCA action is different than the contract upon which this case is based; (2) that because DRC filed the contract complaint in this Court before the FCA action was filed in the district court, comity requires that the action in this Court proceed first; and (3) that DRC will suffer prejudice if this case is suspended pending resolution of the FCA action in the district court. DRC is mistaken upon all three points.

As to the first argument, DRC incorrectly focuses upon the different contracts, rather than the identical fraud at issue in this case and in the FCA case before the district court. Admittedly, the contract upon which this action is premised is a construction contract that was originally entered into between DRC and an agency of the Government of Honduras on December 29, 2000. On October 22, 2001, the Government of Honduras assigned its "rights and obligations derived from the agreement for

---

however, disagrees with the characterizations of the facts, their effect upon the contract, and the conclusions of law proffered by plaintiff and expressly reserves the right to respond to those allegations, characterizations, and conclusions, if the fraud allegations are ever properly before this Court.

contract termination ..." to the United States. A1.[2] The following day, in the mutual termination of its contract with the Government of Honduras, DRC concurred with this transfer. A4. The contract was terminated before substantial work began on the contract. In the FCA case, the construction contract was of a similar type, but for a different group of projects. Thus, DRC is correct when it points out that the contracts in the FCA action and this case are different. What DRC fails to address, however, is that the same fraud underlies both the contract at issue in this case and in the FCA action.

As we demonstrated in our opening brief, the fraud in this case and in the related case, 04-940C, upon which the FCA action is based, was the submission of allegedly false pre-qualification documents. In both cases, the documents indicated that DRC employed a certain number of individuals with certain specified levels of experience and qualifications and owned certain equipment, which it did not own. The same pre-qualification documents were submitted for both this contract and the contract upon which the FCA action is premised. Thus, a determination that the submissions were or were not fraudulent documents in the FCA would bind this Court as to whether the submissions were or were not fraudulent in this case under the principles of

[2] "A_" refers to the page in the Appendix attached to this reply.

collateral estoppel.

"The doctrine of collateral estoppel, or issue preclusion, serves to bar the revisiting of issues that have already been litigated by the same parties or their privies based on the same cause of action." Banner v. United States, 238 F.3d 1348, 1354 (Fed. Cir. 2001)(citing Jet, Inc. v. Sewage Aeration Sys., 223 F.3d 1360, 1365-66 (Fed. Cir.2000)). In Banner the circuit court reiterated that

> Collateral estoppel requires four factors: (1) the issues are identical to those in a prior proceeding, (2) the issues were actually litigated, (3) the determination of the issues was necessary to the resulting judgment, and (4) the party defending against preclusion had a full and fair opportunity to litigate the issues.

238 F.3d at 1354. Each of those factors is clearly present in this case. Under the circuit court's analysis, as long as the issue being litigated is the same, the fact that the issue arose under different contracts is irrelevant.

The salient issue in both this case and the FCA action is whether fraud was effected by DRC through the use of identical pre-qualification documents. If the submission of the purportedly fraudulent pre-qualification documents on the Group 1 contract was or was not fraudulent, then the submission of the same documents to qualify to bid on the Group 1A contract, which was identical to the Group 1 contract, except for the number of projects, similarly would be either fraudulent or not. Thus, the

issue is identical.

As to being actually litigated, DRC in its response states that "DRC is vigorously defending itself in the FCA action." Pl. R. at 1. This assertion speaks for itself. Similarly, the third factor, given the nature of the FCA proceeding, is equally self-evident. Finally, the fourth factor, that the party defending against preclusion had a full and fair opportunity to litigate the issues, is equally obvious, given the identity of the parties in both this action and the FCA action.

In short, given the above, the decision of the district court will be dispositive as to whether the submission of the pre-qualification documents constituted fraud under identical facts on related contracts. Thus, DRC's arguments, that because the contracts are different the results of the FCA action will not bind this court, must fail.[3]

If the fraud alleged in the FCA action tainted the Group 1

[3]Similarly, DRC's argument, that the Government waived the fraud, because the Government supposedly knew about the fraud when it accepted assignment of the contract from the Government of Honduras is a merits issue, which is not appropriate for discussion at this juncture. The United States would simply note that under the assignment of rights by the Government of Honduras to the United Sates, A1, which was agreed to by DRC, A4, the Government of Honduras assigned all rights that it had under the contract to the United Sates Government. Thus, all rights that Honduras enjoyed under the contract transferred to the United States. Expressly included in those rights, under the termination agreement, were rights relating to "presentation errors and omissions in the prequalifying documents." A3. Therefore to the extent the Government of Honduras could assert fraud as a defense, the United States can do likewise.

contract, then that same fraud, committed by the same party, under the same circumstances on a related contract, similarly tainted the Group 1A contract. If that fact is proven, as alleged in the FCA action, then the contract at issue in this case is similarly void ab initio, which precludes recovery under the contract. J.E.T.S., Inc. v. United States, 838 F.2d 1196, 1200 (Fed. Cir.)(false statement by contractor that it was a small business, in order to qualify for award under the "8a" program, rendered contract void ab initio), cert. denied, 486 U.S. 1057 (1988); Godley v. United States, 5 F.3d 1473 (Fed. Cir. 1993)(where the record reveals some causal link between the illegality and the contract provisions, the contract is void ab initio). From this it becomes obvious that, if the obligation to pay does not arise because of fraud, then the Government owes DRC nothing under the fraudulently obtained contract.

The second alleged basis for denying the requested stay, according to DRC, is that comity requires that the first filed action proceed first. Pl. R. at 10. This argument is premised upon the fact that DRC filed its contract claim in this Court and no express FCA claim has been filed in the district court based upon the Group 1A contract. This argument ignores the above analysis.

In our opening brief and above, we demonstrated that the fraud issue in both this case and the FCA action in the district

court are the same fraud, committed under the same circumstances, by the same party, by the same method, on related contracts. The Government maintains, and common sense dictates, that any fraud claim, whether in this Court or in the district court, under these facts is, in effect, the same claim. Clearly this is the case where collateral estoppel would preclude re-litigation of the fraud issue in this Court.

Thus, because the issue is the same and is pending in the district court, the matter is currently pending in another court. Furthermore, no fraud counterclaim has been filed in this Court. As such, there is no fraud claim pending in this Court, but instead the issue is pending solely in the district court. Thus, any argument that this case should proceed, simply because a contract claim was filed in this Court before the FCA complaint was filed in the district court should be rejected.

A further reason for rejecting this alleged basis for denying the requested stay lies in the nature of the doctrine of comity. As DRC acknowledged in its reply, "[c]omity is an equitable doctrine, intended to promote judicial efficiency." Pl. R. at 10 (quoting Northrop Corp. United States, 27 Fed. Cl. 795, 801 (1993)). As such, the question involved here is not only where the complaints were first filed, but more importantly, the circumstances surrounding when the FCA action was filed.

In this case, as we pointed out in our motion and not

refuted by DRC, the United States Attorney's Office and counsel for DRC were discussing resolution of claims of fraudulent acts by DRC in Honduras during 2003. The allegations specifically related to fraudulent acts by DRC, using the same procedures alleged to have been employed in this case.

While these discussions were ongoing, and without notice to the United States, DRC filed the contract complaint in this Court. But for these discussions, and the understanding that the FCA complaint would not be filed while the discussions were ongoing, the FCA action would have been filed months before the complaint was filed in this Court. To now invoke an equitable concept, after having apparently resorted to what could be perceived as a delaying tactic to permit the filing of the contract complaint first, violates the concept upon which equity is based, i.e., fairness.[4]

Nevertheless, whether or not deception was intended by DRC, the fact remains that the FCA case is well under way in the district court. The motion to dismiss, filed by DRC, has been fully briefed. To proceed with the contract claim, and possibly

[4]The Government notes that DRC is represented by different counsel in the FCA case and the case pending in this Court, which may explain the inconsistency. In any event, the result is the same: the delay in filing the FCA complaint was due to the continuing discussions between DRC counsel's and the United States Attorney's Office attempting to resolve the FCA allegations short of litigation. This delay, in turn, allowed the contract complaint to be filed in this Court first.

necessitate the filing of another fraud claim against DRC in this case, benefits neither party and further appears to violate the very purpose of comity, which is judicial efficiency. Especially is this the case where collateral estoppel would preclude the re-litigation of the fraud issue in this Court, once decided by the district court.

This point leads to the last argument proffered by DRC, that DRC will be prejudiced by the failure to proceed with this case pending resolution of the FCA case in the district court. DRC apparently bases this argument upon the misconception that, if this case is not stayed, DRC will receive any amounts that it may be due under the contract sooner than if it waits until the FCA case is resolved. DRC is once again mistaken.

No funds can be paid to DRC under the contract until the fraud allegations are resolved, irrespective of where those allegations are resolved. Given the fact that the motion to dismiss has been fully briefed in the district court, it appears likely that a decision on that phase of the litigation will occur much sooner in the district court and the litigation will proceed from there and result in an earlier resolution of the fraud allegations than will occur in this Court, given the current posture of this case. This conclusion follows from the fact that if the motion to dismiss is not resolved in the district court, the same issue will have to be re-litigated in this Court. As

such, DRC's allegations of prejudice from not being allowed to proceed in this Court ring hollow, because the matter currently appears more likely to be resolved sooner in the district court than in this Court in the current posture.

In summary, DRC, as it must, concedes that the FCA action was properly filed in the district court. The earlier filing of the contract claim in this case resulted from an understanding that the FCA complaint would not be filed while discussions continued about resolving the allegations of fraud without filing a FCA complaint. Any finding regarding fraud by the district court, under the doctrine of collateral estoppel, will be dispostive of the issue in this case. In the absence of a decision regarding fraud by the district court, it appears likely that the issue may have to be addressed in this Court. Because the FCA litigation is fully under way in the district court, judicial economy would be better served by permitting it to continue there. Since resolution of the fraud allegations are an absolute precondition to DRC's entitlement under the contract, DRC is not prejudiced by having the FCA action proceed first in the district court.

For the above stated reasons, we respectfully request that this Court grant our requested suspension of proceedings in this case until the fraud allegations are resolved in the district court. In the alternative, if the Court denies our motion, the

Government requests an enlargement of time of 30 days from the date of the order denying our motion in which to respond to plaintiff's complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s Mark A. Melnick
MARK A. MELNICK
Assistant Director

/s Ronald G. Morgan
RONALD G. MORGAN
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-6289

Of Counsel:
JOHN B. ALUMBAUGH
Attorney Advisor
U.S. Agency for
Int'l Development

January 18, 2005

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 18th day of January 2005, a copy of the foregoing "Defendant's Reply to Plaintiff's Response to Defendant's Motion to Suspend Proceedings Or, in the Alternative, for an Enlargement of Time and Appendix" was electronically filed. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s RONALD G. MORGAN

KARL FREDERICK DIX
George Wenick
Smith, Currie & Hancock LLP
2600 Harris Tower
233 Peachtree Street, N.E.
Atlanta, GA 30303-1530